LAW OFFICES OF

# ALLAN P. HABER, ESQ.

111 Broadway, Suite 701
New York, New York 10006

OF COUNSEL  
STEPHANIE CARVLIN, ESQ.  
GEORGES G. LEDERMAN, ESQ.

TELEPHONE: 212-233-4411
FACSIMILE:   212-374-1506
E-MAIL: allan@haberesq.com

October 16, 2013

Honorable Victor Marrero
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York   10007

Re: United States v. Christopher Reese
      12 Cr. 629(VM)

Dear Judge Marrero:

     Christopher Reese, the defendant in the above-captioned case, will be sentenced on October 25, 2013. I write to provide Your Honor with information that is relevant to your sentencing decision.

## BACKGROUND

     On November 29, 2012, Christopher Reese was arrested for the following charges: conspiracy to commit bank fraud, 18 U.S.C. §1349; bank fraud, 18 U.S.C. §1344; wire fraud, 18 U.S.C. §1349; and, identity theft, 18 U.S.C. §1028A. Mr. Reese has remained in federal custody since his arrest.

     He proceeded to trial on March 25, 2013.  After a relatively short trial in which Mr. Reese testified on his own behalf he was convicted on all four counts.  Essentially, his trial testimony admitted participating in the crimes but denied intending to defraud banks rather than individuals or companies that issued the checks.

## THE PROBATION REPORT

The Department of Probation has computed Christopher Reese's Guidelines Base Offense Level at 7 in Criminal History Category IV, with an Adjusted Offense Level of 27. Under this analysis his jail exposure is 100-125 months imprisonment followed by 2 years, to run consecutively to whatever sentence is imposed for the first 3 counts of the indictment. The PSR recommends a sentence of 125 months imprisonment to be followed by 24 months imprisonment for Aggravated Identify Theft, for a total sentence of 149 months imprisonment. (PSR, PP. 9-10, ¶¶39-51; P. 24.)

## OBJECTIONS TO THE PROBATION REPORT

Mr. Reese does not dispute the base offense Guidelines calculation or the monetary loss calculations but does object to the multiple enhancements suggested in the PSR, which are presented without historical support.

He also objects to calculations that do not take into consideration appropriate reductions in the Guidelines that are consistent with the trial record. The specific <u>enhancements</u> we object to are:

1. **Enhancements**

    a) PSR, P. 10, ¶ 43  (a 2-level increase because the offense involved more than 10 victims.
    b) PSR, P. 10, ¶ 44 (a 2-level increase because the offenses involved the possession of authentication features.)
    c) PSR, P. 10, ¶46 (a 4-level increase because the offense involved five or more individuals whose actions were in part, a result of the direction of Christopher Reese.)
    d) PSR, P. 10, ¶47 (a 2-level increase for using a person under 18 years of age to commit the crime.)

Mr. Reese also objects to not receiving credit for the following Guidelines <u>reductions</u>, which he is entitled to:

2. **Reductions**

    a) A 2-point reduction for Acceptance of Responsibility
    b) A 3-point reduction for abandoning or partially abandoning acts for the successful completion of the substantive offense.

## ISSUES

I)      **A 2-LEVEL ENHANCEMENT FOR TEN OR MORE VICTIM'S (U.S.S.G.**

### §2B1.1(b)(2)(A); PSR, ¶43 IS INAPPROPRIATE GIVEN THE FACTUAL RECORD BEFORE AND AFTER TRIAL.

**The Facts**:
Neither the presentence report, discovery provided by the Government or the trial record establishes that ten or more victims sustained a loss.

**The Law:**
Section 3B1.1 requires 10 victims or more who sustained a monetary loss. A victim, for purposes of the enhancement under §2B1.1(b)(2)(A), "is only those persons or entities who sustained 'actual loss....'" *United States v. Skys*, 637 F.3d 146, 153 (2d Cir. 2011)

**Argument:**
The Government's proposed restitution order lists less-than ten individuals and companies that *sustained an actual loss*. Since the Government has not identified ten or more individuals and/or companies that sustained an *actual loss*, the enhancement is inapplicable.

II) **A 2-LEVEL ENHANCEMENT FOR USING A MINOR TO COMMIT THE OFFENSE U.S.S.G. §3B1.4; PSR ¶47, IS INAPPROPRIATE GIVEN THE TRIAL RECORD AND HISTORY OF THE CASE**

**The Facts:**
Norelis Reyes testified as a witness for the Government during the trial. Her testimony established that she was 17 years old at the time she met Mr. Reese, and that she befriended him and agreed to do him a favor and allow him to deposit a check into her account, with the understanding that once the checked cleared, she would withdraw the money for him.  In return for the favor she would get $2000.  She testified that she neither saw nor signed the check and that she did not know who deposited the check into her account.  She also testified that once the check cleared Mr. Reese drove her to her bank where she withdrew $5000.00, which she gave to Mr. Reese.

 Throughout the proceedings the Government characterized Norelis Reyes as a *victim,* (not a willing participant) in the fraud.  And to underscore this characterization the during trial the Government asked her about certain text messages that confirmed her role as a victim for which she responded:  "Now I'm fucked cause you took the 5,000 and I'm owing money, I'm in deep shit, and that's fucked up.  I don't know what the fuck I'm going to do now.... you tricked me real good, though, I gotta give it to you."  (T. P. 169, L.10-14.)

**The Law:**
"Congress labeled the provision enabling §3B1.4 'Solicitation of a Minor to Commit Crime.' [Violent Crime Control and Law Enforcement Act of 1994, Section 140008. The dictionary defines 'solicitation' as ...The inchoate offense of asking someone to engage in illegal conduct.' (Black's Law Dictionary 1392 (6th ed. 1990)]"; *United States v. Butler*, 207 F.3d 839, 848 (6th Cir. 2000)} Congress intended that the Sentencing Commission would promulgate a sentencing enhancement where a defendant "used or attempted to use any person less than 18 years of age with the intent that the minor commit a Federal offense." *Butler*, 207 F.3d at 845 (quoting Pub. L. No. 103-322, Section 140008, 108 Stat. 2033 (1994) (VCCLEA)).

**Argument:**
The enhancement under Section 3B1.4 is listed amongst the 'role in the offense" adjustments, and not a 'victim related adjustment." A plain reading of the enhancement leads to the reasonable conclusion that the "minor" cannot be a victim in the offense, but must play some conscious role in the commission of the offense. In other words, the minor's conduct must be criminal before the enhancement may be applied. In this case Norelis Reyes' conduct cannot be said to have been criminal where the Government contends that she was a victim. As a consequence the 2-level enhancement should not be applied.

III) **A 4-LEVEL ENHANCEMENT FOR AGGREVATING ROLE AS AN ORGANIZER AND LEADER OF THE OFFENSE IS INAPPROPRIATE (U.S.S.G. §2B1.1(A); PSR ¶ 46).**

**The Facts:**
The PSR recommends a 4-step enhancement based on the conclusion that Mr. Reese was an organizer or leader in the offense. However, there is no support for this conclusion based on the trial record and/or the 3500 material provided by the Government. The only possible person that Mr. Reese could have supervised was Norelis Reyes, however as stated earlier based on the trial evidence and the Government's summation she was a *victim* not a *participant* in the offense.

**The Law:**
To qualify for this adjustment the defendant must have supervised or led at least one "other participant", **or** the fraudulent activity must have been "otherwise extensive." (U.S.S.G. §3B1.1(a))

"Otherwise extensive" has been defined as (i) the number of knowing participants; (ii) the number of unknowing participants whose activities were organized or led by the defendant with specific criminal intent; [and] (iii) the extend to which the services of the unknowing participants were peculiar and necessary to the criminal scheme." (*United States v. Rubenstein*, 403 F. 3d 93,99

(2d Cir. 2005) quoting from *United States v. Carrozzella*, 105 F.3d 796, 803-04 (2d Cir. 1997).

In determining whether or not a defendant is an organizer or leader in the offense conduct the court should consider: 1) the exercise of decision making authority; 2 ) the nature of participation in the commission of the offense; 3) the recruitment of accomplices; 4) the claimed right to a larger share of the fruits of the crime,; 5) the degree of participation in planning or organizing the offense; 6) the nature and scope of the illegal activity; and 7) the degree of control and authority exercised over others.  (U.S.S.G. §3B1.1 appl., n.4)

**Argument:**
Neither the trail record nor documents provided by the Government indicate that Christopher Reese was an organizer or leader in the offense conduct.  No co-defendants testified at trial therefore the record is silent regarding interactions with Mr. Reese and co-defendants.  Any possible conversations that were recorded are too ambiguous in nature to support a finding that Mr. Reese was an organizer or leader in the offense conduct.  The only testimony offered at trial that would support a finding that Mr. Reese gave instructions to people in order to complete his crime came from Norelis Reyes, a non-participant victim according to the Governments theory of the case.  Without an active participant in the crime this branch of the enhancement cannot be satisfied.

This particular crime was not sophisticated or complex in nature and cannot be characterized as "otherwise extensive".  The monetary loss was minimal. The offense conduct was primitive and unsophisticated in nature.  Checks were stolen from the mail, unprofessionally altered and ultimately deposited and partially withdrawn from legitimate accounts with the knowledge, assistance and complicity of the account holders.  They were basically just waiting to be arrested.

Based on the above there is little or no support for the Aggravating Role enhancement.

IV)   **A 2-LEVEL ENHANCEMENT FOR USE OF AN AUTHENTICATION FEATURE DURING THE COMMISSION OF THE CRIME IS NOT SUPPORTED IN THE TRIAL RECORD.  (U.S.S.G. 2B1.1(b)(11(A)(ii); PSR ¶44)**

**The Facts:**
The PSR recommends a 2-level enhancement "...because the offense involved the possession of authentication features."  The documents involved in the instant offense were checks.  No identification documents were used at any time.  Each of the checks were authentic and not counterfeit.  The Government has not suggested that any of the checks were anything other than legitimate – albeit

altered.  There are no factual bases in the trial record for the conclusion that Mr. Reese was responsible for the use of an authentication feature during the commission of the crime.

**The Law:**
An "authentication feature", for Sentencing Guidelines purposes, is defined in 18 U.S.C. §1028(d)(1), as "any hologram, watermark, certification, symbol, code, image, sequence of numbers or letter, or other feature that either individually or in combination with another feature is used by the issuing authority of an identification document, document making implement, or means of identification, to determine if the document is counterfeit, altered, or otherwise falsified." (18 U.S.C. §1028(d)(1); U.S.S.G. ¶2B1.1, Appl., n. 9(A)).

The enhancement was clearly intended to discourage sophisticated counterfeiting."  (*United States v. Sabas Rodriguez-Cisneros*, 2013 U.S. Dist. LEXIS 5353 (Dist. Of Nebraska, Jan. 10, 2013.)

**Argument:**
The checks involved in this case are not "identification documents," "document making implements," or "means of identification."  They were business checks that did not contain any of the characteristics that define "authentication features".

A defendant uses or possesses an authentication feature in violation of 2B1.1(b)(11)(A)(ii) by making use of the identification document on which the authentication feature is displayed. (*United States v. Baker*, 435 Fed. Appx.2, 4 (D.C.Cir. 2011)).  An authentication feature could be an identification documents that would help cash a bogus check but not the check itself.

Under these circumstances this enhancement is not applicable.

V)  **A 3-LEVEL REDUCTION IS WARRANTED BECAUSE PART OF THE INSTANT OFFENSE WAS PARTIALLY COMPLETED AND PARTIALLY ABANDONED (U.S.S.G. §2X1.1(b)(1) and (2)).**

**The Facts:**
The intended loss is estimated at between $120,000 and $200,000.  The actual loss is substantially less.  In April of 2012, a check in the amount of approximately $22,000 was deposited into the account of Christina Ramos. The check cleared days later, but no attempt to withdraw the funds was made and the funds remained in that account until the Government recovered them in or about September of 2013.

**The Law:**
Where the instant offense is partially completed the 3-level reduction applies. (*United States v. Downing* 297 F.3d 52, 62 (2d Cir. 2002; *United States v. Amato*

46 F.3d 1255, 1260 (2d Cir. 1994; *United States v. Sprecher*, 988 F.2d 318 (2d Cir. 1993It should be noted that in this case the jury verdict did not indicate whether its verdict rested on the substantive offense or the attempted offense.

"If an attempt, decrease by 3 levels, unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control."  (2X1.1(b)(1))

"If a conspiracy, decrease by 3 levels, unless the defendant or a co-conspirator completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond their control."  (2X1.1(b)(2))

**Argument:**
In April 2012 a check in the approximate amount of $22,000 was deposited into the account of Christina Ramos.  The check cleared days later but no attempt to withdraw the funds was made and the funds remained in that account until the Government recovered them in or about September 2012 approximately 6 months after the check cleared.

Since the intended loss noted above includes the $22,000 transaction, which was abandoned, a 3-level reduction is warranted under U.S.S.G. §2X1.1(b)(1) and (2).

VI) **A 2-LEVEL REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY IS WARRANTED BECAUSE DURING HIS TRIAL TESTIMONY CHRISTOPHER REESE ADMITTED HIS CRIMINAL CONDUCT.**

**The Facts:**
Christopher Reese testified at trial that he was guilty of everything the Government alleged in the indictment except that he never intended to defraud banks.  His intent was to steal money belonging to private companies (not banks) that issued the checks in question, which he and his co-conspirators were responsible for stealing.  Even if the Court finds that his legal analysis was flawed he would still be entitled to a 2-point reduction for Acceptance of Responsibility. The only criminal element he failed to accept responsibility for was attempting or stealing money by fraudulent means from an institution that was FDIC insured  - an element he would have had no input in establishing.  During his testimony he admitted that he, or one of his co-conspirators, deposited checks not belonging to them into financial institutions that were FDIC insured.

**The Law:**
Section 3E1.1 of the U.S. Sentencing Guidelines provides for a 2-level reduction in the adjusted offense level when a defendant "truthfully admit(s) the conduct comprising the offenses of conviction. (U.S.S.G. §3E1.1, Appl. n.1 (A)). "In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial.  This may occur ...when a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).  (Id., n.2)

**Argument:**
Christopher Reese took the stand during his trial and admitted under oath that he was responsible for his participation in this check-cashing scheme.  He truthfully and in great detail explained to the jury how he came up with the idea to steal checks belonging to or issued by private institutions and or businesses.  After the checks were stolen he solicited the help of Norelis Reyes after convincing her to deposit one of the checks into her personal checking account.  He assured her that her participation was not criminal and promised to pay her a fee for the use of her account. Once the check cleared he asked her to make a $5000.00 withdrawal, which she did.  All the money was given to Mr. Reese.  There was never any issue as to whether or not Mr. Reese's conduct was criminal in nature because he admitted it was at trial. The only reason he went to trial was for him to preserve issues that do not relate to factual guilt so he could make a challenge to the applicability of a statute to his conduct.

Under these circumstances amply supported by the trial record he is entitled to a 2-point reduction for acceptance of responsibility.

## THE §3553(a) FACTORS

Following the United States Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005); *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007)(District Court may impose a sentence that varies from the Guidelines based entirely on the Court's view that the Guidelines range doesn't properly reflect the §3553(a) factors); *Gall v. United* States, 552 U.S. 38, 128 S.Ct. 586 (2007)("extraordinary circumstances" not required to impose non-guideline sentence); *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 2465 (2007)(while appellate court may apply presumption that guideline sentence imposed by district court was reasonable, "sentencing court does not enjoy the benefit of a legal presumption that the Guidelines should apply."), and the Second Circuit's interpretation of *Booker* in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), this Court's sentencing decision must be governed by the factors listed in 18 U.S.C. §3553(a). Those factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the Guidelines range and any applicable Guidelines Policy Statements, the need to avoid sentencing disparities and the need to provide restitution to the victim..

This Court must consider all of the §3553(a) factors to derive a sentence that is "sufficient, but not greater than necessary," to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public and to provided the defendant with needed educational or vocational training, medical care or other correctional treatment. *See United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006) (analyzing the "parsimony clause" of 18 U.S.C. §3553(a)).

1. **The Guidelines Range and Policy Statements**

While this Court is no longer bound to impose a Guidelines sentence, the Second Circuit has directed District Courts to "consider" the Guidelines, and in "order to fulfill this statutory duty to 'consider' the Guidelines, a sentencing judge will normally have to determine the applicable Guidelines range." *Crosby*, 397 F.3d at 111. Thus, one step in deciding what sentence is appropriate for Mr. Reese is to calculate the Guideline range for his offense. However, there is no presumption that the Guidelines provide the "correct" sentence, and this Court may vary from the Guidelines based entirely on the Court's view that the Guidelines range doesn't properly reflect the §3553(a) factors. *See Kimbrough v. United States,* 552 S. Ct. at 109 (2007).

Should the Court impose a guidelines sentence we agree that Probation properly calculated the base offense level with the proper adjustment for monetary loss. However, Mr. Reese objects to all other enhancements.

2. **Criminal History Category Calculations**

Mr. Reese has no objections to calculations made in the PSR related to determining his correct Criminal History Category as IV.  (PSR, ¶54-74)

3. **The Nature and Circumstances of the Offense**

The offense was a rather unsophisticated theft of checks, which were then altered to include fake payees so individuals other than those whose names, appeared on the original unaltered checks could cash them.  The stolen checks were then deposited into legitimate accounts for withdrawal once they cleared.  The offense was motived by familial and personal stress related to the birth of his child and his ability to care for his family while unemployed.  Clearly his multiple health issues contributed to his unemployment.

4. **Mr. Reese's History and Characteristics**

   a. **Mr. Reese's Background**

As the PSR indicates, Mr. Reese was born into a poor family with an abusive father who drank excessively and was physically abusive to his mother and the children while they lived together. (PSR ¶79) When he was 10 years old his mother put his father out of the house. (Id.)

After his father was thrown out he no longer contributed to the household so his mother struggled to put food on the table. (PSR ¶80)

The defendant's mother indicated that due to health issues Christopher did not attend school until he was 12 years old. Born with a perforated anus he had to wear a colostomy bag by the age of one. (PSR ¶86) He was also born with one kidney. (Id.) He is currently being treated at the MCC with the following medications for the following health issues: 1) Nitroglycerine for a heart condition; 2) Proventil for asthma; 3) Dilantin for epileptic seizures. Mr. Reese has listed his medical conditions as heart murmur, epilepsy, spinal defects, and asthma as well as bowel and bladder incontinence. He also reports being treated for a cardiomyopathy condition.

Given this background one can better understand his return to crime after being released on supervised release from a previous federal sentence. The financial pressure of being an unemployed father coupled with his inability to support his family had a dramatic impact on his behavior. This information is provided only to better understand his motivation at the time he committed the crimes.

5. **Unwarranted Sentence Disparities**

Debate has existed in this Circuit (and others) over whether the reference to disparity in sentences in 18 U.S.C. §3553(a) means disparity within a case (between defendants in the same cases) or disparity between the defendant to be sentenced and all defendants who have been convicted of the same offense under similar circumstances. The Second Circuit now appears to have condoned a District Court's considering disparity among co-defendants in determining what constitutes a reasonable sentence. *United States v. Willis*, 476 F.3d 103, 110 (2d Cir. 2007)(District Court may consider disparities among co-defendants when imposing sentence); *United States v. Fernandez*, 443 F.3d 19, 32 n.9 (2d Cir. 2006)(plain language of §3553(a)(6) seems not to prohibit judges from considering disparities among co-defendants). In either case, however, the disparity to be avoided is "unwarranted" disparity.

Two co-defendants, William Green and Nefateemia Massey, were also charged in the original indictment. Both of them pled guilty before trial and were sentenced for playing different roles in the offense. William Green's Guidelines calculation was 33-41 months imprisonment. His criminal history category was comparable or worse than Christopher Reese's criminal history category. For reasons set forth in the Courts sentencing decision Mr. Green received a sentence of 24 months imprisonment – 14 months less than probation recommended in his PSR. Green pled guilty to conspiracy to commit bank and wire fraud and bank fraud - 3 of the 4 counts in the original indictment. Nefateemia Massey pled guilty to a single count and was sentenced to "time served" and 6-month home confinement. She has no prior criminal record and therefore would not be considered similarly situated as Mr. Reese. But Mr. Green is another story.

When imposing sentence on William Green the Court cited significant reasons for departing from imposing a Guidelines sentence - his age at the time of the offense, his medical condition and the fact that his criminal record was overstated because of the passage of time and the fact that his more

significant convictions occurred quite some time ago.  The Court also made it clear that a significant factor in sentencing Mr. Green was Mr. Baum's arguments related to actual loss v. intended loss.  Mr. Baum argued and the Government agreed that the actual loss was approximately one-half of the intended loss and asked to Court to give this argument significant weight.  This argument weighs just as heavily for Mr. Reese as it does for Mr. Green.

Clearly, the Court is of the opinion that Mr. Reese is significantly more culpable than Mr. Green although there is very little documentation in the record to support such a finding. The more difficult question is how much more culpable is Mr. Reese than Mr. Green?

Understandably, it was a difficult trial with much tension and unnecessary conflict between the parties.  It was an emotional trial full of confrontation so the risk of punishing Mr. Reese more than necessary is a serious concern.  Understandably, his punishment should be greater than that of Mr. Green.  After all is said and done Mr. Reese chose to go to trial and Mr. Green pled guilty to 3 counts of criminal behavior.  Mr. Reese was under supervision at the time of his offense and as a consequence should suffer the result of that behavior.  But the Court should not loose sight of the fact that his time was already enhanced by 2-levels because he was on supervision at the time of the offense.

Probation has recommended 125 months imprisonment (the top of the Guidelines) followed by an additional 2 years for identify theft for a grand total of approximately 14 years imprisonment.  This calculation completely ignores the fact that the enhancements he was charged with totally took into account all his alleged conduct during the commission of the crime.  Sentencing Mr. Reese to a sentence of 7 times more than Mr. Green would be unfair, would not satisfy the ends of justice and would be more than necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

6. **The Kinds of Sentences Available**

Mr. Reese is charged with a number of fraud related offenses.  The PSR recommends a sentence of 149 months imprisonment.  Should the Court grant any of the arguments made above the numbers would change dramatically.   The Court should consider the Sentencing Commissions recent change in policy for medical reasons and deteriorating health.  (*See, Fernandez v. United States*, 2010 U.S. Dist. LEXIS 37083 (S.D.N.Y. April 14, 2010) Weighing "advanced age and deteriorating health" as part of §3553(a) analysis.) A number of medical related factors support the need for fashioning a more humane sentence for inmates with serious medical needs.  See U.S. Dept. Justice, National Institute of Corrections, Correctional Health Care, Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates, pp. 9-10 (2004).

### THE APPROPRIATE SENTENCE

Section 3553(a) requires this Court to consider all the factors reviewed above and ultimately derive a sentence "sufficient, but not greater than necessary," to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public and to provide the defendant with needed educational or

vocational training, medical care or other correctional treatment. These goals can easily be realized by sentencing him to the 60 months' imprisonment followed by 24 months imprisonment for identity theft to run consecutively to the 60 months imposed for the fraud related conduct.

### The Goals of Sentencing – Just Punishment, Public Safety and Deterrence

Section 3553(a) also requires that this Court consider the purposes of sentencing, including punishment, promotion of public safety and deterrence. Under these standards, Mr. Reese's sentence need not be longer than 84 months.

With this fact in mind, it is clear that all the goals of sentencing specified in 18 U.S.C. §3553(a) can be well satisfied in this case by imposing a term of imprisonment of no more than 84 months imprisonment.

### CONCLUSION

In the circumstances of this case, imposing a term of incarceration not to exceed 84 months can best satisfy the goal of "just punishment". It is respectfully submitted that any term of incarceration greater than 84 months would constitute a sentence that is greater than necessary to meet the goals delineated in 18 U.S.C. §3553(a).

In a final note Mr. Reese has requested that the Court recommend that he be allowed to remain in the MCC for 90 days after his sentencing. The reason for this request is to meet with his appeals lawyer, whomever that might be, in order to discuss issues he wishes to raise on appeal. He has also asked me to apologize to the Court and to the Government for any inconvenience he created in his zealous attempt to represent himself.

I hope that these observations are helpful to the Court in deciding how to fashion an appropriate sentence for Mr. Reese.

                                              Respectfully submitted,

                                              _____/s/_____
                                              Allan P. Haber
                                              Counsel for Christopher Reese

cc: AUSA: Micah Smith