CHRISTOPHER E. REESE-THOMAS
REGISTER NO. 17878-083
M.C.C. NEW YORK
150 PARK ROW
NEW YORK, NEW YORK 10007

December 10, 2013

THE HONORABLE VICTOR MARRERO
UNITED STATES DISTRICT JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 PEARL STREET
NEW YORK, NEW YORK 10007

DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/12/13

Re: United States v. Christopher E. Reese,
Docket No. 12-CR-629 (VM)

Dear Judge Marrero:

This letter is respectfully submitted in mitigation of the sentence to be imposed on December 20, 2013, pursuant to Rule 32(i)(4)(A)(ii) of the Federal Rules of Criminal Procedure.

I would first like to thank your Honor for taking the time to personally review this letter. As the Court is well aware, this is not my first appearance before a federal court for sentencing. I, therefore, think its important to inform the Court of the circumstances that prompted my involvement in the offense conduct. Since I value your Honor's time, I will attempt to be brief.

I. INSTANT OFFENSE MOTIVE

On October 22, 2009, after being released from my most recent term of imprisonment, I began working as a legal assistant and investigator for an attorney (and best friend, Uzmah Saghir). Through the personal and professional relationship I would also obtain private housing and a two year "rent-free" arrangement. In or about June 2010, I had begun providing legal research, writing, and limited investigative services directly to federal and state prisoners ("independent projects"). Subsequently, Ms. Saghir was disbarred and our professional relationship ended. I immediately went on to seek employment with other attorneys, a venture with which I had some success.

During the summer of 2011, I was directed by my assigned probation officer (and her supervisor) that I could no longer provide legal research, writing, or investigative services directly to criminal defendants. I was directed that all work must be provided through an attorney who I must instruct to compensate me in the form of a check. Any professional conduct inconsistent with Probation's directive would be considered a violation of the terms and conditions of my supervised release.

In addition to the aforementioned restrictions, Probation also directed that I inform my then-attorney supervisor of my criminal history and the nature of my prior offenses. I was warned that should I fail to inform the attorney supervisor, Probation would provide him with notice. I elected to inform the attorney supervisor. Shortly after being informed of the nature of my criminal history, the attorney supervisor terminated our professional relationship.

In September of 2011, I learned that I would be expecting my first child. News of the pregnancy resulted in my child's mother being kicked out of the home she shared with her grandmother. She immediately began residing with me, having nowhere else to go. At the time, the apartment building where I resided was the subject of foreclosure proceedings, and the New York State Supreme Court had appointed a receiver to collect rent from all tenants. In or about December of 2011, the receiver commenced eviction proceedings against me for non-payment. The receiver sought a contempt finding due to my failure to adhere to an order accompanying the appointment of the receiver regarding rent payments. Both the receiver and the court advised that, in view of the foreclosure proceedings, my "rent-free" arrangement was invalid, and I was ordered to pay arrears which were in excess of $26,000. The failure to make immediate payments would result in the eviction of me, my fiance and my then-unborn child.

Were it not for the circumstances surrounding my housing situation, and my responsibility to my fiance and then-unborn child, I would not have embarked upon the path that has led me before your Honor. Prior to the unreasonable and debilitating restrictions placed upon my employment opportunities by the U.S. Probation Office, I would not engaged in the offense conduct that brings me before the Court. I am respectfully requesting that your Honor consider these circumstances when fashioning an appropriate sentence.

II. EXTRAORDINARY FAMILY CIRCUMSTANCES

On June 5, 2012, my fiance gave birth to my first child. Shortly after my arrest and detention in this case my extended family were evicted from the apartment we shared. They have remained homeless ever since. My fiance's lack of education and employment history renders her incapable of providing the bear necessities for herself and/or my daughter. Prior to my arrest I was the sole caregiver to both my fiance and daughter. Since my confinement they have suffered considerably and continue to suffer in my absence.

While the foregoing circumstances present more than a sufficient basis upon which to depart from the sentencing range, see, e.g., United States v. Galante, 111 F.3d 1029, 1035 (2nd Cir. 1997)(defendant provided substantial support for two children); United States v. Johnson, 964 F.2d 124, 129-30 (2nd Cir. 1992)(defendant was sole supporter of several children), I have not sought such a departure. I ask only that your Honor consider these extraordinary family circumstances in imposing the sentence.

It should also be noted that in or about August 2010 I was appointed guardian ad litem over the person and property of my father (Eugene Thomas), who was declared "incapacitated" by the New York State Supreme Court (Kings County). See, e.g., Thomas v. S.S.A., 2013 U.S. Dist. LEXIS 63750 *1 (E.D.N.Y. 2013) (Brodie, J.). One of my many responsibilities as guardian was to ensure that my father's rent was paid monthly. However, since my confinement, I have been compelled to abandon that responsibility. Within months of my confinement, eviction proceedings were commenced against my father for non-payment. I am unaware of the status of those proceedings.

Finally, prior to my confinement, I was the sole caregiver to my mother who is 72 years old and in very poor health. Some of my many responsibilities were to provide her with daily meals, ensure administration of daily medications, providing transportation to and from frequent medical appointments, and general housekeeping duties. My mother suffers from, inter alia, high blood pressure, a cardiac condition, diabetes, significantly impaired vision, and severely limited mobility. She was recently hospitalized after nearly slipping into a diabetic coma due to her inability to properly care for herself. Attempts to secure a home-health aide proved fruitless when her insurance company declined to pay for such assistance. Inasmuch as my mother lives on a fixed income, she cannot afford to pay for the essential and life preserving services of a home-health aide. She was recently discharged from a nursing home amid claims of abuse after a three day stay.

I am respectfully requesting that your Honor consider these extraordinary circumstances when fashioning an appropriate sentence. See, United States v. Alba, 933 F.2d 1117, 1122 (2nd Cir. 1991)(Departure upheld where defendant supported family and his father relied on him to get out of wheelchair).

III. ADDITIONAL MITIGATING FACTORS

Prior to trial, the Government proposed a plea offer with a stipulated sentencing range of 46 to 57 months imprisonment. After consultation with trial counsel, I declined to accept the plea offer. Specifically, counsel advised that the sentencing range after a jury verdict would not exceed 57 to 71 months.

Counsel, however, grossly underestimated the sentencing exposure in this case. But for counsel's grossly inaccurate estimate, I would have accepted the Government's plea offer despite my belief that I was actually innocent of the bank fraud offenses.

It should also be noted that I proceeded to trial primarily to contest the application of the bank fraud statute to the offense conduct. I have never denied responsibility for the offense conduct. I have, however, repeatedly stated that I did not have an intent to cause harm to a financial institution. My intention was to steal money from the issuers of the checks (and consequently the intended recipients) -- not banks. The Government has not taken exception with Probation's findings that "[t]he instant offense involved a scheme to fraudulently procure funds <u>from the accounts of persons in businesses in New York</u>." <u>PSR at 6, ¶15</u> (emphasis added) Probation's findings confirms my true intentions.

IV. CONCLUSION

As I come before this Court for sentencing I make no excuses for my behavior. My motives do not excuse my behavior, and I must respect whatever sentence the Court imposes. I ask only that the Court consider the facts and circumstances set forth herein in fashioning an appropriate sentence.

Respectfully submitted,

CHRISTOPHER E. REESE-THOMAS

cc: Allan Haber, Esq.
    Micah W.J. Smith, AUSA

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by defendant Christopher Reese.

SO ORDERED.

12-12-13
DATE        VICTOR MARRERO, U.S.D.J.