UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - x
                                       :
UNITED STATES OF AMERICA
                                       :
        - v. -                                  S2 12 Cr. 629 (VM)
                                       :
CHRISTOPHER E. REESE,
        a/k/a "Chris Reese,"           :
        a/k/a "Doc Holiday,"
                                       :
             Defendant.
                                       :
- - - - - - - - - - - - - - - - - - - x


**GOVERNMENT'S SENTENCING MEMORANDUM**


                          PREET BHARARA
                          United States Attorney for the
                          Southern District of New York
                          One St. Andrew's Plaza
                          New York, New York 10007



Micah W. J. Smith
Jessica Ortiz
Assistant United States Attorneys
      - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - x
                                         :
UNITED STATES OF AMERICA
                                         :
        - v. -                               S2 12 Cr. 629 (VM)
                                         :
CHRISTOPHER E. REESE,
        a/k/a "Chris Reese,"             :
        a/k/a "Doc Holiday,"
                                         :
              Defendant.
                                         :
- - - - - - - - - - - - - - - - - - - - x

### GOVERNMENT'S SENTENCING MEMORANDUM

The Government respectfully submits this sentencing memorandum in connection with the sentencing of defendant Christopher E. Reese, a/k/a "Chris Reese," a/k/a "Doc Holiday," which is scheduled for December 20, 2013, at 2:30 p.m.  Reese was convicted after trial of four counts in Indictment S2 12 Cr. 629 (VM).

The Probation Office's Presentence Report has calculated Reese's total offense level as 27; has set his Criminal History Category at IV; and has determined that the applicable Guidelines range is 100 to 125 months' imprisonment for Counts One, Two, and Three, and an additional, consecutive 24 months' imprisonment for Count Four.  The Probation Office recommends a sentence at the very top of that applicable Guideline range:  a total of 139 months' imprisonment.

The Government agrees with the Probation Office that Reese's criminal conduct calls for a serious sentence of imprisonment.  But it respectfully requests two modifications from the Probation Office's calculation of the advisory Guidelines range.  For the reasons set forth below, the Government respectfully submits that the Reese's total offense level should be 29, and respectfully requests that the Court make a within-Guidelines departure from Criminal History Category IV to Criminal History Category V, with the result that the advisory Guidelines range would be 140 to 175 months' imprisonment for Counts One, Two, and Three, to be followed by a mandatory 24 months' imprisonment for Count Four.  And the Government respectfully submits that in light of the serious nature of Reese's offenses, and the high likelihood of recidivism, a substantial sentence is warranted.

**BACKGROUND**

## I.   Reese's Rich History of Fraud

Christopher Reese is a 45-year-old man who has devoted his adult life to fraud.  What makes Reese's conduct all the more serious is that he has not only made himself into a felon several times over, but has also entangled other young individuals from disadvantaged backgrounds into his fraudulent schemes and damaged some of their lives too.

By 2003, Reese's criminal track record was so egregious that Judge Gleeson in the Eastern District of New York, in sentencing Reese for what was at the time his latest fraudulent offense, upwardly departed from Criminal History Category V to Criminal History Category VI, stating:

> "He can't stop committing frauds . . . . [C]riminal history category five doesn't adequately reflect the risk of recidivism.  Let's face it, there is no doubt, I'm an optimist by nature but there is no doubt Mr. Reese Thomas will recidivate.  He has demonstrated an inability to get along without committing frauds that, as the government points out, become more and more sophisticated over time.  He commits crimes from jail, he commits crimes while on release.  I notice in the presentence report he submitted fictitious – said he purported to have medical appointments that he in fact didn't have in order to get out of home confinement.   Southern District case he had bail revoked and committed crimes from jail.  There is no criminal history category even above six, though I'm departing only to six, that adequately represents the risk of recidivism.  I also believe that the criminal history category five doesn't adequately represent the seriousness of his criminal past.  He has a rich history of fraud."

*United States* v. *Christopher Thomas*, 02 Cr. 441 (E.D.N.Y.) (transcript of sentencing proceeding, June 19, 2003, at 21-23).

Reese added chapters to his "rich history of fraud" not long after he was released from prison after serving the sentence of 115 months' imprisonment that Judge Gleeson imposed.  While on supervised release in the Eastern District of New York, Reese embarked on the criminal conduct that eventually resulted in the charges in this case.

## II.  The Charged Conduct

Superseding Indictment S2 12 Cr. 629 (VM) charged Reese with four counts.  Count One charged Reese with conspiring to commit bank fraud, in violation of 18 U.S.C. § 1349.  Count Two charged Reese with committing bank fraud, and aiding and abetting bank fraud, in violation of 18 U.S.C. §§ 1344 at 2. Count Three charged Reese with conspiring to commit wire fraud, in violation of 18 U.S.C. § 1349.  Count Four charged Reese with aggravated identity theft, in violation of 18 U.S.C. § 1028A. On March 29, 2013, after four days of trial, the jury found Reese guilty of all counts in Superseding Indictment S2 12 Cr. 629 (VM).

As the evidence at trial demonstrated, Reese was at the heart of a conspiracy to steal checks from twin commercial buildings at 260 and 261 Madison Avenue in Manhattan.  In 2012, Reese began working as a criminal investigator for a defense counsel with office space in 261 Madison Avenue.  Reese used this cover story to get access to the building and steal (or coordinate the theft of) checks that had been sent to offices on the various floors of the building.  As Reese acknowledged in his testimony at trial, he himself came up with the scheme to target checks in 261 Madison Avenue.  *See* Tr. 546:14-20 (Mar. 28, 2013) ("It was, it was my decision to focus on 261 because I had seen on maybe one or two occasions when I had visited the

4

location that the mail was being left outside of the offices on the floor in that general area . . . . So I suggested that checks could be obtained from 261.").

Reese delegated the riskiest tasks to his co-conspirators. For example, co-defendant William N. Green was tasked with walking into banks and depositing the stolen, altered checks. Other individuals — co-defendant Nefateemia Massey, as well as Cristina Ramos, Craig McPherson, and Norelis Reyes – were persuaded to allow checks to be deposited into their accounts. And Reese testified that he tasked others with physically stealing the checks that he had scouted.  The evidence at trial, which included a trove of text messages from Reese's cellular telephone and the testimony of Norelis Reyes, made clear that Reese was the leader and organizer of the fraudulent scheme. *See, e.g.*, GX 410 (text message log), at p.5 (Reese to McPherson:  "I need u to send 8400 to my nephew William Green by moneygram"); at p.12 (Green to Reese: "Whats on the agenda for tomorrow . . . Am I still on standby?"), at p.16 (Reese to Massey:  "Make sure the check number is at least 100 number away from the one I gave you . . . . Better be up and on your job punk").

The evidence also demonstrated that Reese was in search of additional individuals who could be recruited to this scheme. *See, e.g.*, *id.* at p.13 (Green to Reese: "I have someone who want

5

to open an account and get on the team ill watch him . . . . I knew you busy wiht family so i went iknew you busy so i went." Reese to Green:  "Good job.").  The testimony of Norelis Reyes provided a striking, concrete example of how Reese would seek out individuals whose bank accounts could be used to further his fraud, and demonstrated that Reese was even willing to prey on high school students to accomplish his objective.

Reese's offenses were not limited to bank fraud and wire fraud.  In his quest to obtain bank accounts to convert his stolen checks into cash, Reese also engaged in aggravated identity theft by stealing and making fraudulent use of the personal identifying information of a victim named John Sakal. At trial, Reese testified that he was not responsible for the theft or use of John Sakal's personal identification and that he was therefore not guilty of this count. *See* Tr. 551:9-552:1 (Mar. 28, 2013).  By finding him guilty of aggravated identity theft, the jury found that Reese was not testifying truthfully in this respect.

Reese's fraud swept even more broadly than the theft of checks and identities.  As the trial evidence demonstrated, Reese also stole and used the personal identifying information and account information of Clifford James.  Reese used this information to persuade Norelis Reyes into depositing a fraudulent check into her account and withdrawing proceeds.  But

6

he also used this information to make a $3,500 payment for a
Progressive insurance bill on his Mercedes Benz; Progressive
eventually received a chargeback for this $3,500 payment, and
the amount was never repaid.  *See* Tr. 273:4-278:12 (Mar. 27,
2013).

## III. The PSR

The PSR concludes that the applicable Guidelines range is
100 to 120 months' imprisonment on Counts One through Three and
a mandatory consecutive sentence of 24 months' imprisonment on
Count Four.  It recommends 139 months' imprisonment.

The PSR did not apply a two-level enhancement for
obstruction of justice based on Reese's testimony that he did
not steal John Sakal's identity.  But the PSR does not take the
position that such an enhancement is unwarranted.  Instead, the
Probation Office has taken no position on this issue and
"defer[red] to the Court as to whether the defendant's actions
were in violation of Section 3C1.1."  *Id.* at ¶ 49.

## IV.  The Plea Offer Prior To Trial

In his letter dated December 10, 2013, Reese claims that
the Government extended a plea offer "with a stipulated
sentencing range of 46 to 57 months imprisonment," and that he
declined to accept this offer only because his trial counsel,
Ronald L. Garnett, Esq., "advised that the sentencing range
after a jury verdict would not exceed 57 to 71 months."

7

In fact, the Government's plea offer to him did not provide for a stipulated sentencing range of 46 to 57 months' imprisonment.  Instead, it provided for a stipulated Guidelines range of 57 to 71 months' imprisonment, and would have allowed the Government to argue for a sentence greater than the stipulated Guidelines range based on the sentencing factors in 18 U.S.C. § 3553(a).  Moreover, as Reese's extensive pre-trial pro se letters to the Court made clear – letters in which he demanded a speedy trial and even requested that his first appointed counsel be removed because counsel had consented to the exclusion of time for Speedy Trial Act purposes so that he could review discovery and discuss a possible pretrial disposition with the Government – Reese had no interest in pleading guilty prior to trial.  *See, e.g.*, Letter from Christopher E. Reese dated December 19, 2012 ("I have not waived, nor authorized the waiver of [my right to a speedy trial].  There are no plea discussions under way, and no justifiable reason for delay, and I request a trial within the time period specified in 18 U.S.C. § 3161.").

**DISCUSSION**

**I.   Applicable Legal Standards**

The Sentencing Guidelines are no longer mandatory, but they continue to serve as "a benchmark or a point of reference or departure" when considering a particular sentence to impose.

8

*United States* v. *Rubenstein*, 403 F.3d 93, 98-99 (2d Cir. 2005). In addition to the Guidelines, the other factors set forth in 18 U.S.C. § 3553(a) must be considered.  Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the following purposes:

> (A) to reflect the seriousness of the offense, to promote the respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

Section 3553(a) further directs the Court — in determining the particular sentence to impose — to consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences of available; (4) the sentencing range set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines police statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.  *See* 18 U.S.C. § 3553(a).

## II.  Analysis

### A.   The Guidelines Calculation

The PSR concludes that Reese's total offense level is 27 and his Criminal History Category is IV.  The Government respectfully submits that the PSR's calculations should be modified in two respects.  First, the total offense level should in fact be 29 because a two-level obstruction of justice enhancement should apply.  Second, although the PSR concludes that Reese's Criminal History Category is IV, the Government respectfully requests that the Court upwardly adjust it from Category IV to Category V.

### 1.   The Obstruction of Justice Enhancement

The PSR calculates a total offense level of 27.  The Government respectfully submits that the total offense level should in fact be 29, because a two-level enhancement for obstruction of justice applies pursuant to U.S.S.G. § 3C1.1. Although the PSR did not apply the enhancement, it did not suggest that the enhancement is inapplicable, but instead deferred to the Court as to whether Reese's testimony qualified as obstruction of justice.  *See* PSR ¶ 49.

Reese's testimony does qualify as obstruction of justice. As Application Note 4(B) to U.S.S.G. § 3C1.1 recognizes, obstruction of justice includes "committing . . . perjury."  At trial in this case, Reese testified under oath that he was not

involved in the theft or use of John Sakal's personal
identification and that he was therefore not guilty of this
count.  *See* Tr. 551:9-552:1 (Mar. 28, 2013).  The evidence
demonstrated, however, that Reese did not testify truthfully on
this matter.  Indeed, by finding him guilty of aggravated
identity theft, the jury properly recognized that Reese was not
testifying truthfully in this respect.  The obstruction of
justice enhancement should apply.

### 2.   The Upward Departure for Criminal History

The PSR finds that Reese's Criminal History Category is IV.
When Reese was last sentenced by Judge Gleeson in 2003, Judge
Gleeson made an initial calculation that Reese's Criminal
History Category was V, but upwardly departed to Criminal
History Category VI pursuant to U.S.S.G. § 4A1.3(a).  *See supra*
at p.3.  Judge Gleeson then sentenced Reese to 115 months'
imprisonment, recognizing that there was "no doubt Mr. Reese
Thomas will recidivate," and that even a Criminal History
Category of VI did not adequately account for this risk.  *Id.*
(quoting Judge Gleeson).

Judge Gleeson's prediction has proved sadly correct.  While
on supervised release for this conviction before Judge Gleeson,
*see* PSR ¶ 73, Reese committed the offenses in this case.  The
only reason the PSR's calculation of his Criminal History
Category is IV – lower than it was in the case before Judge

11

Gleeson even prior to his upward departure – is because Judge Gleeson imposed a substantial sentence that prevented Reese from committing additional crimes for several years, and which now means that the bulk of Reese's prior sentences are not counted in computing his Criminal History Category.

On these facts, Criminal History Category IV does not adequately account for the high risk of recidivism Reese presents and "substantially underrepresents . . . the likelihood that [Reese] will commit other crimes."  U.S.S.G. § 4A1.3(a)(1). A within-Guidelines upward departure to Criminal History Category V is warranted.

**B.   Reese's Challenges to the PSR**

In a letter submitted by sentencing counsel Allan P. Haber, Esq. (hereinafter "Haber Ltr."), Reese challenges certain enhancements in the PSR and argues that he is entitled to certain reductions.  But Reese's challenges to the PSR's calculation of his total offense level are meritless.

**1.   The Number of Victims**

First, Reese argues that there were not ten victims who suffered a "monetary loss," Haber Ltr. at 3 – and that the two-level enhancement for the number of victims pursuant to U.S.S.G. § 2B1.1(b)(2) is therefore improper – because the Government proposed to counsel a restitution order listing only eight victims.  That initial draft of a restitution order did not,

12

however, include a ninth victim who, as the trial evidence demonstrated, suffered a monetary loss:  the father of Norelis Reyes, whose account was drained of funds as a result of Reese's fraud.

In addition, there are two other victims:  John Sakal and Clifford James, whose personal identifying information Reese stole to perpetrate his fraudulent schemes.  Under Application Note 4(E) to U.S.S.G. § 2B1.1, "any individual whose means of identification was used unlawfully or without authority" counts as a "victim" for purposes of the enhancement in U.S.S.G. § 2B1.1(b)(2).  The phrase "means of identification" is defined at 18 U.S.C. § 1028(d)(7) as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual."  Reese used John Sakal's name, Social Security Number, home address, and other personal information to open up a PayPal account pretending to be John Sakal; Reese used Clifford James's name and credit card account numbers to pretend that he was a business partner of Clifford James.  Both thus count as victims.

Moreover, John Sakal and Clifford James count as victims for the additional reason that they suffered actual losses, given that they had to spend "an appreciable amount of time securing reimbursement from their banks or credit card companies," and whose "loss of time" can be "measured in

13

monetary terms." *United States* v. *Abiodun*, 536 F.3d 162, 169
(2d Cir. 2008). *See, e.g.*, Tr. 304:17-18 (Mar. 27, 2013)
(Sakal: "I had numerous checks bounce, fees and so forth, the
hassle of opening a new account."); Tr. 248:2-19 (Mar. 27, 2013)
(James: testifying that it took Capital One approximately 23
months to remove the fraudulent charges from his accounts). The
Court need only make a reasonable estimate of the loss, *see*
Application Note 3(C) to U.S.S.G. § 2B1.1, and it is a
reasonable estimate that John Sakal and Clifford James
collectively lost no less than $200 worth of time (a total of 10
hours at $20 an hour) dealing with the consequences of Reese's
fraud.

### 2.    The Use of a Minor

Reese next argues that a two-level enhancement under
U.S.S.G. § 3B1.4 is unwarranted because Norelis Reyes – who was
a minor at the time Reese recruited her into allowing him to
deposit a fraudulent check into her account and directed her to
withdraw funds – did not "play some conscious role in the
commission of the offense." Haber Ltr. at 4.

But there is no such requirement in Section 3B1.4, which
merely requires that a defendant "use[] or attempt[] to use a
person less than eighteen years of age to commit the offense or
assist in avoiding detection of, or apprehension for, the
offense . . . ." *Accord United States* v. *Gaskin*, 364 F.3d 438,

14

464 (2d Cir. 2004) ("[T]he appropriate focus of a court's inquiry is on the actions and intent of the defendant.  Whether the minor himself engaged in any criminal actions, whether the minor intended to assist in the adult's criminal activity, or whether the minor even knew that the adult was involved in criminal activity are factors irrelevant to the application of the § 3B1.4 enhancement.").

In this case, Reese used Norelis Reyes to commit the offense by having her provide him with her bank account information so that a fraudulent check could be deposited, and then by having her withdraw funds him at his direction.  In addition, Reese used Reyes to assist in avoiding detection – his risk of being detected was reduced by having Reyes's account used and by having Reyes walk into the bank and withdraw the money on his behalf.  The enhancement clearly applies.

### 3.    The Leadership Enhancement

Reese argues that the four-level leadership enhancement under U.S.S.G. § 3B1.1(a) is improper because Reese did not supervise or lead anyone other than Norelis Reyes, who was a victim and not a participant in the crime.  This is incorrect.

The trial evidence showed that Reese was the mastermind and orchestrator of the fraudulent scheme.  *See, e.g.*, Tr. 546:14-20 (Mar. 28, 2013); *see supra* at p.4-5.  Text messages from Reese's phone make clear that he supervised or led the activities of co-

15

defendants William N. Green and Nefateemia Massey, as well as co-conspirator Craig McPherson. *See supra* at p.5 (quoting text messages). Norelis Reyes's testimony further showed that Reese supervised and led her conduct. And this evidence supports the inference that Cristina Ramos, a college-age individual whose account was also used to deposit stolen checks, was similarly under the supervision of Reese.

Moreover, Reese's criminal activity involved at least five criminal participants: himself, co-defendants Nefateemia Massey and William N. Green, uncharged co-conspirator Craig McPherson, *see* Tr. 569:20-21 (Mar. 28, 2013) (Reese acknowledging that he spoke to McPherson as recently as November before his arrest), and the "guy . . . in the barber shop" whom Reese testified was another co-conspirator but whom Reese declined to identify at trial, Tr. 547:17 (Mar. 28, 2013); *see also id.* at 546:4 (Reese: testifying that one of his co-conspirators was a "member of the underworld"). In addition, the text messages showed that Reese and co-defendant Green were actively recruiting other individuals who had bank accounts that could be used for the scheme. *See* GX 410 at p.13 (Green to Reese: "I have someone who want to open an account and get on the team ill watch him . . . . I knew you busy wiht family so i went iknew you busy so i

went." Reese to Green: "Good job.").[1]  One of these individuals

was Lasheen Newton, to whom Reese at one point instructed that a

wire transfer be sent. *See* GX 410, at p.6 (Reese text message

to McPherson on May 16, 2012 providing the name of Lasheen

Newton); GX 239C (May 16, 2013 Western Union wire transfer to

Lasheen Newton).

### 4.  The Authentication Feature Enhancement

Reese contends that his offense did not involve the use of

an authentication feature, and that the two-level enhancement

under U.S.S.G. § 2B1.1(b)(11)(A)(ii) is therefore unwarranted.

This argument fails.  Reese's offenses included his use of John

Sakal's Social Security Number to create a fraudulent PayPal

account which Reese used to attempt to extract money from

Sakal's bank account at a financial institution.  The term

"authentication feature" is defined at 18 U.S.C. § 1028(d)(1) as

including any "sequence of numbers" that are "used by the

issuing authority on an identification document . . . or means

of identification to determine if the document is counterfeit,

altered, or otherwise falsified."  A "means of identification,"

in turn, is defined at 18 U.S.C. § 1028(d)(7) to include a

---

[1]    By the time Green wrote the above text message – in June
2012 – Craig McPherson had already become involved in the
fraudulent scheme and would not have been a new recruit.  The
other known individuals whose bank accounts were used – Cristina
Ramos, Nefateemia Massey, and Norelis Reyes – were female.
Accordingly, Green's reference to a new male recruit ("ill watch
him") refers to an unidentified co-conspirator.

"social security number."  By using Sakal's Social Security Number to further his fraudulent scheme, Reese thus used authentication features:  a sequence of numbers that the United States places on Social Security Cards to assist in determining whether they are authentic.

### 5. The Reductions

Reese argues for reductions of his offense level based on two separate rationales, neither of which has merit.

First, Reese argues that a three-level reduction is warranted under U.S.S.G. § 2X1.1(b) because his offenses were partially abandoned when no attempt was made to retrieve $22,000 in criminal proceeds that were deposited into Cristina Ramos's account.  This argument fails because by depositing a stolen, altered check in Cristina Ramos's bank account, Reese and his co-conspirators successfully took all steps necessary to commit the substantive offenses of bank fraud and wire fraud.  Section 2X1.1(b) does not require that a defendant take all steps necessary to enjoy the fruits of his offense, only that he take all steps necessary to commit the offense.  A defendant who steals $22,000 and leaves it in a bank account that the Government later seizes has still completed the crime of theft.

In any event, Reese's argument also fails because the total intended loss amount was greater than $120,000 even excluding the $22,000 check to which Reese refers.  *See* Application Note 4

18

to U.S.S.G. § 2X1.1(b)(1) (explaining that if the offense level for the part of the offense that was not abandoned is greater than the offense level for the total intended offense minus three levels, then the greater number should be used).  Reese does not argue otherwise.

Second, Reese argues that he is entitled to a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.  Reese contends that "[t]he only reason he went to trial was to preserve issues that do not relate to factual guilt so he could make a challenge to the applicability of a statute to his conduct."  Haber Ltr. at 8.  This is, of course, incorrect: Reese testified that he was not involved in the theft of John Sakal's identity, which was plainly testimony challenging his factual guilt.

But Reese's argument fails for the additional reason that, as Application Note 2 to U.S.S.G. § 3E1.1 makes clear, "a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." There is nothing in the pre-trial record supporting Reese's claims of acceptance of responsibility.  The record shows only that, after Reese sat through the Government's entire case in chief, he decided that his best defense was to testify, admit to certain facts, and hope that he would garner enough credibility through those admissions to be able to persuade the jury that he

19

was testifying truthfully when he denied other facts (such as
his involvement in aggravated identity theft).  This is not
acceptance of responsibility.

####    C.    The Section 3553(a) Analysis

The Section 3553(a) factors weigh in favor of a substantial
sentence here.  Reese's leadership role in the instant offenses,
his recruitment of other co-conspirators, his manipulation and
use of a high school student to perpetrate his fraud, and his
long history of fraud that gives little reason to believe he
will not begin committing additional crimes as soon as he is
released from prison, all call for a substantial sentence of
imprisonment to protect the public from Reese's continued
criminal conduct – and to prevent Reese from recruiting yet more
people into these criminal schemes.  Indeed, the fact that Reese
was unwilling at trial to identify some of his co-conspirators
is further reason to doubt that he has any plans to desist from
crime when released.  And Reese deserves a substantially longer
sentence than his co-defendants William N. Green and Nefateemia
Massey, neither of whom was convicted of aggravated identity
theft, and both of whom worked at Reese's direction and who
pleaded guilty and truly acknowledged their responsibility.

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court find that the applicable Sentencing Guidelines range is 140 to 175 months' imprisonment for Counts One through Three, plus a mandatory consecutive 24 months' imprisonment for Count Four, and that the Court sentence the defendant Christopher E. Reese, a/k/a "Chris Reese," a/k/a "Doc Holiday," to a substantial term of imprisonment.

Dated:  New York, New York
       December 13, 2013

                         Respectfully submitted,

                         PREET BHARARA
                         United States Attorney
                         Southern District of New York


By:  <u>/s/ Micah W. J. Smith</u>
      Micah W. J. Smith
      Jessica Ortiz
      Assistant United States Attorneys
      (212) 637-2439

**CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2013, the foregoing sentencing memorandum was filed and served on defense counsel of record, Allan P. Haber, Esq., by ECF and by email.


/s/ Micah W. J. Smith
MICAH W. J. SMITH
Assistant United States Attorney


Dated:  New York, New York
        December 13, 2013