LAW OFFICES OF
# ALLAN P. HABER, ESQ.
111 Broadway, Suite 701
New York, New York 10006

OF COUNSEL
STEPHANIE CARVLIN, ESQ.
GEORGES G. LEDERMAN, ESQ.

TELEPHONE: 212-233-4411
FACSIMILE: 212-374-1506
E-MAIL: allan@haberesq.com

January 18, 2014

Honorable Victor Marrero
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re: <u>United States v. Christopher Reese</u>
12 Cr. 629(VM)

Dear Judge Marrero:

The Defendant respectfully submits this Supplemental Sentencing Letter Memorandum in connection with his sentencing currently scheduled for January 24, 2014. It is a reply to allegations made in the Government's response to his October 16, 2013 sentencing submission.

I. **THERE IS NO EVIDENCE THAT THE DEFENDANT ATTEMPTED TO OBSTRUCT JUSTICE OR COMMIT PERJURY, AND AS A CONSEQUENCE, THE TWO LEVEL ENHANCEMENT UNDER U.S.S.G. §3C1 CANNOT BE APPLIED TO THE FACTS OF THIS CASE.**

The Government seeks a two level enhancement pursuant to §3C1.1 of the U.S. Sentencing Guidelines, arguing, "Reese testified under oath that he was <u>not</u> involved in the theft or use of John Sakal's personal identification and that he was therefore not guilty of this count."

Page | 1

(Government's Sentencing Memorandum Pages 10-11, ¶1) In support of its request for the enhancement, the Government further argues "Reese did not testify truthfully on this matter. Indeed, by finding him guilty of aggravated identity theft, the jury properly recognized that Reese was not testifying truthfully in this respect." (Id, at 11). The Government directs the Court to defendant's trial testimony:

**Defense Counsel:**
>Now, you're also charged with stealing the identity of people. That's Count Four in this indictment. Do you have that in front of you?

**Defendant:**
>I do. I'm not sure who the people are, the identities are. There's no names here. So I don't know specifically who it is that's the focus or the victim in that count.

**Defense Counsel:**
>Did you ever in connection with your activities in this case intend to do that?

**Defendant:**
>Intend to steal someone's identity?

**Defense Counsel:**
>Yes.

**Defendant:**
>No.

**Defense Counsel:**
>Did you ever use anyone else's identity?

**Defendant:**
>No.

Trial Transcripts (hereinafter) "TT", page 551: 3-14, 24, March 28, 2013.

A complete review of the trial transcripts reveals, defendant was never specifically asked whether he had ever used John Sakal's name on direct by defense counsel or on cross examination by the Government. Although the indictment alleges the use of the name (only) of another person, it does not identify who that other person was. On this record, where the defendant testified, "I don't know specifically who it is that's the focus or victim in that

(aggravated identity theft) count." It cannot be said that he has testified falsely where he was neither asked specifically about the use of John Sakal's name, and the indictment (Count Four) did not identify John Sakal as the person whose name the defendant allegedly used.

Section 3C1.1 of the U.S. Sentencing Guidelines provides for a two level enhancement whenever a defendant has committed perjury. See, U.S.S.G. §3C1.1, comment. Note 3(b). "of course, not every accused who testifies at trial and is convicted will incur an enhanced sentence under §3C1.1for committing perjury. "United States v. Dunnigan, 507 U.S. 87, 95 (1993) As the Supreme Court has recognized, a defendant's "testimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent." Id. The Court also observed that inaccurate testimony due to "confusion, mistake or faulty memory" would not support an enhancement under §3C1.1. The Court also requires the sentencing court to "review the evidence and make independent findings necessary to establish a willful...obstruction of justice..." Id.

While it is undeniable that the jury returned a verdict of guilty on the aggravated identity theft count, the record reveals no evidence that the defendant committed perjury, or attempted to obstruct justice. A witness testifying under oath commits perjury when the witness "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." 507 U.S. at 94. When the defendant testified he stated, in no uncertain terms, "I don't know specifically who it is that's the focus or the victim in that (aggravated identity theft) count." (See, "TT" at 551: 7-8). From this testimony it cannot be said that the defendant committed perjury.

In discharging its duty to make particularized findings on the matter, "it is preferable for

the district court to address each element of the alleged perjury in a separate and clear finding." 507 U.S. at 95. Since Probation specifically considered whether the defendant's trial testimony merited the enhancement, and decided that it did not, and the trial testimony does not reveal that the defendant was aware that he was even charged with having used, possessed, or transferred John Sakal's name during and in relation to either of the offenses alleged in Counts One through Three of the indictment, failure to address each element of the alleged perjury would render appellate review impossible thereby denying this defendant due process.

The requested enhancement should be denied.

II. **THE GOVERNMENT HAS FAILED TO ARTICULATE FACTS SUFFICIENT TO SUPPORT AN UPWARD DEPARTURE**

The Government asks the Court to depart upward from the Criminal History Category IV to Criminal History Category V. The sole basis for this request is that defendant previously received a sentence that resulted from an upward departure after Judge Gleeson found that his Criminal History Category (then category V) did not adequately account for the risk of recidivism given the information before that court. The Government has not, however, pointed to facts which make it highly probable that defendant will recidivate. Quite to the contrary, the record conclusively establishes that defendant was gainfully employed as a paralegal and investigator for the entire time that he was on supervised release after being released from imprisonment in 2009. The defendant has testified to what prompted him to participate in the offense conduct – his willingness to assume responsibility for his unborn child and that child's mother, by ensuring that they were not rendered homeless due to his inability to make good on his financial responsibilities. While these circumstances do not justify defendant's behavior, it places it in perspective and counsels against finding that Criminal History Category IV does not

Page | 4

adequately reflect both the seriousness of his criminal history or the likelihood of recidivism.

Since the Government has failed to point to facts meriting an upward departure the Court may only upwardly depart after identifying a factual basis for doing so, and affording defendant a meaningful opportunity to challenge the asserted basis for such a departure. "Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's pre-hearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure." Fed. R. Crim. P. Rule 32(h).

Inasmuch as the Government has not identified a proper factual basis for an upward departure, and the Pre-sentence Report does not recommend any such departure, the Court should decline to depart upward.

III. **SECTION 2B1.6 (AGGRAVATED IDENTITY THEFT) EXPRESSLY FORBIDS ANY ENHANCEMENT FOR THE "USE OF AUTHENTICATION FEATURES" AND, IN THIS CASE, "TEN OR MORE VICTIMS"**

Section 2B1.6 provides that "if(i)f a sentence under this Guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for the...use of a means of identification when determining the sentence fo the underlying offense." U.S.S.G. 2B1.6, comment note 2. It should require no citation of authority to say that "use of an authentication feature (2B1.1(b)(11)(A)(ii), and "ten or more victims" (22B1.1(b) (2)) are "specific offense characteristics within the meaning of 2B1.6 note 2. Therefore, neither of the two enhancements the Government seeks may be applied given the application of 2B1.6 to this case.

Page | 5

### a) **TEN OR MORE VICTIMS**

The Government seeks an enhancement for ten or more victims pursuant to 2B1.1(b)(2). THE PRESENTENCE REPORT recommended this enhancement but the report did not identify ten or more victims. The defendant objected to the Presentence Reports recommendation arguing the absence of a factual basis for the enhancement. The Government has responded with the names of three alleged victims – the father of Norelis Reyes, John Sakal, and Clifford James. The Government submits that these names are in addition to the Victims set fortyh in their proposed restitution order which counsel objected to in part, on the grounds that at least one of the victims named in the order suffered no loss. The Government conceded that no loss had been sustained with respect to that victim, effectively reducing the number of victims in the proposed restitution order to seven. Despite the Government's failure to adduce sufficient facts to establish that the alleged victims actually suffered a loss two of the Government's alleged victims, John Sakal and Clifford James, may not be used to apply the recommended enhancement.

The Government seeks to include John Sakal and Clifford James as victims for the purpose of enhancing the sentence in this case because their means of identification was used unlawfully or without authority. (Government Sentencing Memo Page 13, ¶2, quoting §2B1.1(B)(2)). However §2B1.1.6 expressly forbids applying any specific offense characteristic "for the...use of a means of identification when determining the sentence for the underlying offense. ( U.S.S.G., §2B1.6, comment, note 2: *United States v. Jones*, 551 F.3D 19, 25 (1ST Cir. 2008)). "This means that when a defendant receives the two-year consecutive sentence on the identity theft count, '(his) sentence for any underlying offense is not eligible for a 2-level

Page | 6

increase for 'transfer, possession, or use' of ...identification.'" *United States v. Cruz*, 713 F.3d 600, 607 (quoting *Jones*, 551 F.3d at 25). The Government's attempt to secure a sentence enhancement based on the use of John Sakal and Clifford James' means of identification is, consequently, unavailing and would result in a gross misapplication of the Sentencing Guidelines.

Accordingly, the Court should decline to find that there were ten or more victims in this case, and should decline to consider John Sakal and Clifford James victims for the reasons stated above.

### b) USE OF AN AUTHENTICATION FEATURE

The Government has identified the "authentication feature" as John Sakal's Social Security Number, and asks the Court to accord a two level enhancement based on the alleged use of that Social Security Number. As demonstrated above, where a defendant has been convicted of aggravated identity theft, and receives a two-year consecutive sentence as a result, the Court may not apply any specific offense characteristics for the "use" of a means of identification – which includes a Social Security Number. This, the Court should not apply the requested enhancement.

### IV. THE ENHANCEMENT FOR USE OF A MINOR TO COMMIT THE OFFENSE DOES NOT APPLY SINCE NORELIS REYES WAS A VICITM – NOT A PARTICIPANT – AND THE GOVERNMENT IS ESTOPPED FROM ARGUING THAT REYES FACILITATED THE COMMISSION OF THE OFFENSE.

The Government, in stark contrast to the position taken during the trial in which it painted Norelis Reyes as an innocent victim who had been taken advantage of by the defendant, (see, "TT" at 41, ("Reese targeted that teenager for his criminal scheme...Chris Reese invited the

Page | 7

teenager to dinner, he gave her cash, he promised to take her shopping, he drove her around in his Mercedes Benz, and he made her think they were friends.")), now attempts to characterize Reyes as a participant in the offense (see, Government Sentence Memorandum at 16 ("Norelis Reyes's testimony further showed that Reese supervised and led her conduct"). The Government's current position is inconsistent and irreconcilable with the position it took during the trial (i.e., that Norelis Reyes was a victim of defendant's alleged scheme to defraud). The jury likely found that Reyes was a victim and credited her testimony that she was not "part of the whole scam." ("TT" at 139 lines 16-17). The Government is, therefore, estopped from arguing that Reyes was, in any way shape or form, a participant in the instant offense.

The well-established doctrine of judicial estoppel, which is recognized in both federal and state court, demands absolute truth and consistency in all sworn positions, and seeks to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to exigencies of the moment. *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001). Courts have recognized that allowing this practice violates "due process". *Stupf v. Mitchell*, 367 F.3d 594, 611 (6th Cir. 2004); *Smith v. Groose*, 205 F.3d 1045, 1052 (8th Cir. 2000)). The various positions taken by the Government as it relates to the status of Reyes have varied widely from trial to sentencing stages. If the Court were to accept the Government's recent position -- that Reyes facilitated the commission of the offense and was not a victim -- a due process violation would occur since the Government's sentencing position is clearly and categorically repugnant to its trial theory that Reyes was a victim.

It is noteworthy that the Government, in its sentencing submission, argues for the first time that Reyes' father was also a victim. Reyes' father did not testify during the trial, and has

not, to our knowledge, submitted a sworn statement attesting to sustaining a loss. Despite the absence of testimony or a statement from Reyes' father, it seems virtually impossible to victimize Reyes' father and not victimize Reyes – joint account holders. The Government throughout the trial maintained that Reyes had been tricked by the defendant. Thus, she could not have truly been "used" to commit the offense, any more that John Sakal or Clifford James themselves were "used" to commit or facilitate the offense. Thus, the enhancement provided under 3B1.4 has no application where the victim is a minor, and nothing in the Sentencing Guidelines suggest that it should. Notably, victim related enhancements are found in Chapter 3A of the Sentencing Guidelines – not chapter 3B.

Accordingly, the Court should decline to accord the two level enhancement for use of a minor to commit the offense.

## V. THE TRIAL EVIDENCE DOES NOT SUPPORT A FINDING OF FIVE OR MORE PARTICIPANTS OR THAT THE DEFENDANT DIRECTED THE ACTIVITY OF ANOTHER PARTICIPANT

The Government, for the first time, in its sentencing submission takes the position that Craig McPherson was an "uncharged coconspirator" and therefore one of the finve participants in the offense. The trial record is completely devoid of any evidence supporting the Government's new claim that McPherson was a coconspirator. Indeed, in its summation to the jury, the Government suggested that McPherson was a victim just like Reyes:

> Ladies and gentleman, that settlement that he was talking about back in May with Craig McPherson is just the same cover story that he gave Norelis Reyes. You remember Norelis told you he said it's a settlement...That's the story he used. He was using that phone in May, he was using that story in May, and he was using that some story in August.

("TT" 604:8-11 and 13-15) It should also be noted that the indictment refers to McPherson,

Page | 9

innocently, as "Account Holder -2." Nowhere in the indictment, evidence, or arguments throughout the trial did the Government take the position that McPherson was criminally responsible for the commission of the offense. Inasmuch as the evidence (e.g., text messages) clearly establish that McPherson was not a willing participant in the offense – and the position taken by the Government during the trial is irreconcilable with their sentencing position – the Government is estopped from even claiming that McPherson was criminally responsible for the offense. Thus, McPherson may not be included amongst the participants, and the enhancement sought by the Government should be rejected.

The Court should also reject the Government's baseless characterization of defendant as "the mastermind and orchestrator of the fraudulent scheme." (Government's Sentencing Memorandum Page 15, ¶4) During the trial, after all the evidence had been introduced and the defendant testified truthfully, the Government summed up to the jury, in relevant part, as follows:

> So members of the jury, soon this case will be in your hands. But before I sit down, I want to say one more thing about the crimes committed in this case. You'll remember that back on Monday when we spoke, I said that Mr. Reese was the mastermind of this conspiracy. Well, we might have to amend that because he suggested there might be other masterminds in this conspiracy, be he was clearly a significant member.

("TT" 589: 11-17). The Government took the position during summation that defendant's testimony was credible and believable when he testified that his involvement in the offense conduct was limited. The Government has even accepted as true, as defendant's testimony established, that there was another individual who concocted the plan to obtain, alter, and then negotiate checks. (See, e.g., Governments Sentencing Memorandum Page 16, ¶2 (quoting

defendant's testimony about eh "guy...in the barber shop")). The Government's recent attempt to label this defendant as the mastermind, despite its summation to the jury to the contrary is just another example of how they changed theories throughout this case with alarming frequency. The Court should promptly reject the latest attempt, and decline to award them the benefit of such unfair, and unconstitutional gamesmanship.

"In enhancing a defendant's sentence based on his role in the offense, a district court must make specific factual findings as to that role." *United States v. Carter*, 489 F.3d 528, 538 (2d Cir. 2007). "Although this requirement of making specific factual findings 'may interfere with the smooth operation of the sentencing hearing," we require specific factual findings to permit meaningful appellate review." *Carter* at 538 (quoting *United States v. Stevens*, 985 F.2d 1175, 1184). After making such findings, the Court should decline to accord an enhancement.

## CONCLUSION

For all the foregoing reasons the Court should impose a sentence consistent with the arguments made by Mr. Reese or present a specific factual bases for rejecting any arguments made on his behalf.

Respectfully submitted,

*Allan P. Haber*

Allan P. Haber
Attorney for Christopher Reese

APH: fms

> The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by *defendant Christopher Reese*.
>
> SO ORDERED.
>
> 1-21-14
> DATE        VICTOR MARRERO, U.S.D.J.