UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA,                    :

                                            :

    -  against  -                           :

                                            :

CHRISTOPHER REESE,                           :

                                            :

                      Defendant.          :

------------------------------------X

12-Cr-629 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

    By letter motions dated January 27, January 29, January 30, February 3, and June 16, 2014, defendant Christopher Reese ("Reese") moved for a correction of sentence pursuant to Rule 35(a) of the Federal Rules of Criminal Procedure ("Rule 35(a)"). (See Dkt. Nos. 133, 138, 139, 143, 168.) Reese additionally opposed the Court's imposition of a forfeiture order ("Forfeiture Order") (Dkt. No. 141) by letter motion dated February 10, 2014 (Dkt. No. 145) and disputed the inclusion of certain victims as part of the restitution order ("Restitution Order") (Dkt. No. 142) by letter motion dated February 10, 2014 (Dkt. No. 146). On February 25, 2014, the Court vacated the Forfeiture Order in order to permit Reese the opportunity to contest its contents. (Dkt. No. 150.) To this end, the Court held a hearing on June 20, 2014, at which

time the Court also articulated findings of fact in relation to sentencing. Finally, on June 30, 2014, Reese made a motion for a new trial based on alleged perjury of a witness pursuant to Rule 33(b)(1) of the Federal Rules of Criminal Procedure. (Dkt. No. 171.)

For the reasons discussed below, Reese's Rule 35(a) motion is GRANTED in part and DENIED in part, his motion opposing the Restitution Order is DENIED, and his motion to vacate the Forfeiture Order is GRANTED in part and DENIED in part, and his Rule 33(b)(1) motion is DENIED.

## I.   BACKGROUND

The Court held a trial in this matter during March 2013, at which the jury found Reese guilty of: (a) one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349 ("Count One"); (b) one count of bank fraud in violation of 18 U.S.C. § 1344 ("Count Two"); (c) one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343 ("Count Three"); and (d) one count of aggravated identity theft in violation of 18 U.S.C. § 1028A ("Count Four"). On January 24, 2014, the Court sentenced Reese to eighty-four months' imprisonment for each of Counts One, Two, and Three, to run concurrently to each other, and twenty-four months' imprisonment for Count Four, to run consecutively to the

2

sentences for Counts One, Two, and Three, creating an effective sentence of one hundred eight months of imprisonment. In addition to the term of imprisonment, this Court sentenced Reese to three years' supervised release for Counts One, Two, and Three, to run concurrently to each other, and one year of supervised release for Count Four, to run consecutively to the other counts. The effective term of supervised release was, therefore, four years. In determining Reese's sentence, the Court considered the arguments advanced by both Reese and the Government in their respective sentencing submissions. (See Dkt. Nos. 120, 122, 126, 129; Letter from Reese dated December 16, 2013.) Further, at sentencing the Court adopted in full the Presentence Investigation Report, dated July 25, 2013.

## II.   LEGAL STANDARD

Rule 35(a) provides that, within fourteen days after sentencing, "the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Fed R. Crim. P. 35(a).

## III.  DISCUSSION

### A.  VICTIM ENHANCEMENT

At sentencing, the Court found that Reese's actions involved ten or more victims, resulting in a two-level

3

enhancement under U.S.S.G. § 2B1.1(b)(2) to Reese's total offense level. In his Rule 35(a) motion, Reese argues that the Court erred in applying this adjustment because two of the victims, John Sakal and Clifford James, were victims only because their "means of identification [were] used unlawfully or without authority." U.S.S.G. § 2B1.1 app. 4(E) (2013). Under certain circumstances, a defendant's offense level cannot be enhanced for unlawful use of another's "means of identification" if the defendant was also convicted of aggravated identity theft, 18 U.S.C. § 1028A, as Reese was in this case. U.S.S.G. § 2B1.6 app. 2 (2013).

Even if Reese were correct that victims only by virtue of the unlawful use of their means of identification cannot count towards the ten-victim enhancement in this case, the Court found that Sakal and James experienced actual losses aside from the use of their means of identification. Namely, "they had to spend an appreciable amount of time securing reimbursement from their banks or credit card companies." (Gov't Sent. Mem. dated December 13, 2013, Dkt. No. 123, at 13.) As such a loss of time can be quantified monetarily, Sakal and James are correctly considered victims. See United States v. Abiodun, 536 F.3d 162, 168-69 (2d Cir. 2008).

Further, Reese argues that Metropolitan Equities and Cox Media cannot be considered victims because all of their losses were absorbed by JP Morgan Chase Bank and Bank of America, respectively. In the case of Metropolitan Equities, Reese alleges that JP Morgan Chase Bank compensated Metropolitan Equities after funds were fraudulently drawn from Metropolitan Equities's account. The Government, in its letter dated January 31, 2014 (Dkt. No. 140) ("Restitution Letter"), indicates that, at trial, a representative of JP Morgan Chase Bank listed all parties compensated by JP Morgan Chase Bank following Reese's fraud, and Metropolitan Equities was not among the parties so compensated. (Restitution Letter at 6.) Thus, the Government argues, Metropolitan Equities must have borne this loss without compensation from JP Morgan Chase Bank. Reese similarly asserts that Bank of America compensated Cox Media following the deposit of a fraudulent check from Cox Media's bank account. The Government's Restitution Letter explains that both Wells Fargo and Bank of America refused to provide reimbursement to Cox Media, so Cox Media suffered the loss caused by the fraudulent check. (Restitution Letter at 8.)

At sentencing, "it [is] the government's burden to prove, by a preponderance of the evidence," facts relevant to

sentencing. United States v. Navarro, 156 F. App'x 384, 386 (2d Cir. 2005). Here, the Court concludes that the Government has shown by a preponderance of the evidence that both Metropolitan Equities and Cox Media were victims of Reese's criminal conduct.

In addition, Reese argues that the Court committed clear error by failing at sentencing to make factual findings regarding the number of victims and the actual loss each victim suffered. The Court has examined the transcript of Reese's sentencing and agrees that further articulation of facts in support of the victim enhancement is warranted in this case. When there are "disputed issues of fact" regarding a sentencing enhancement, "the district court must make findings with sufficient clarity to permit meaningful appellate review." United States v. Skys, 637 F.3d 146, 152 (2d Cir. 2011) (remanding case to district court for further proceedings where district court at sentencing did not articulate facts to support the ten-victim enhancement). In response, the Court held a hearing on June 20, 2014, at which time the Court articulated the basis for the its decision that enhancement under § 2B1.1(b)(2) is warranted. See United States v. Chaklader, 232 F.3d 343, 347 (2d Cir. 2000) (finding

that a district court may hold a hearing to correct sentencing errors).[1]

B.   LEADERSHIP ENHANCEMENT

The Court at sentencing found that Reese's sentence warranted enhancement by four levels, on the ground that Reese was the organizer or leader of a criminal activity involving at least five participants. U.S.S.G. § 3B1.1(a). Reese argues that the Court was required to make specific factual findings on the record in support of the leadership enhancement, and that its failure to do so constituted clear error. Upon examination of the transcript of Reese's sentencing, the Court is persuaded that further articulation of facts to support the enhancement under U.S.S.G. § 3B1.1(a) is warranted. Before imposing a leadership enhancement, "the

---

[1] Specifically, the Court stated that the following ten victims suffered actual loss as the result of Reese's criminal acts:

1)  JP Morgan Chase Bank in the amount of $4,854.29, based on two separate losses of $1,642.20 and $3,212.09;
2)  Metropolitan Equities, LLC in the amount of $2,500;
3)  MGLW, LLP in the amount of $1,386;
4)  Robert Weiss in the amount of $500;
5)  Citibank in the amount of $2,200;
6)  Bank of America in the amount of $26,400 based on two separate losses of $15,000 and $11,400;
7)  Cox Media Group in the amount of $2,324.33;
8)  John Sakal in the amount of $1,400 based on a reasonable estimate of the value of the time lost by Sakal securing reimbursement from his bank;
9)  Clifford James in the amount of $200 based on a reasonable estimate of the time lost by James securing reimbursement from his bank; and
10) Rodolfo Reyes in the amount of $2,263.93.

sentencing court must make specific findings as to why a particular subsection of § 3B1.1 adjustment applies." <u>United States v. Ware</u>, 577 F.3d 442, 452 (2d Cir. 2009). Thus, at the hearing on June 20, 2014, the Court articulated the basis for the Court's decision that enhancement under § 3B1.1 is warranted. <u>See</u> <u>Chaklader</u>, 232 F.3d at 347 (finding that a district court may hold a hearing to correct sentencing errors).[2]

## C.   <u>DOUBLE JEOPARDY</u>

Reese further argues that his convictions for both conspiracy to commit bank fraud and conspiracy to commit wire fraud constitute double jeopardy, in violation of the Fifth Amendment of the United States Constitution. U.S. Const. amend. V. This argument is without merit.

---

[2] Specifically, the Court found that the Government proved by a preponderance of the evidence that Reese served as leader of a criminal act involving five or more individuals. Evidence introduced at trial of text messages sent from Reese to William Green, Nafateemia Massey, and Craig McPherson illustrated that Reese was the leader of the conspiracy, and trial evidence showed that the individuals involved in the conspiracy were:

1) Reese himself;
2) William Green;
3) Nafateemia Massey;
4) Craig McPherson;
5) Lasheen Newton;
6) Unnamed co-conspirator -- "guy in the barber shop" -- who Reese admitted was a conspirator but refused to name; and
7) A final individual that Reese and William Green recruited, as evidenced by their text messages.

To assess whether two offenses charged separately in an indictment are really one offense charged twice, courts apply the "Blockburger test." See, e.g., United States v. Chacko, 169 F.3d 140, 146 (2d Cir. 1999) (citing Blockburger v. United States, 284 U.S. 299 (1932); United States v. Dixon, 509 U.S. 688, 696 (1993)). "The Blockburger test examines whether each charged offense contains an element not contained in the other charged offense. If there is an element in each offense that is not contained in the other, they are not the same for the purposes of double jeopardy, and they can both be prosecuted." Chacko, 169 F.3d at 146 (citations omitted); see also United States v. Irving, 554 F.3d 64, 76 (2d Cir. 2009) ("As to whether two convictions are for the same offense where 'the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied . . . is whether each provision requires proof of a fact which the other does not.'" (quoting Rutledge v. United States, 517 U.S. 292, 297 (1996))).

In comparing bank fraud under § 1344 and wire fraud under § 1343, it is clear that each contains an element not contained in the other. Wire fraud criminalizes fraud through the transmission, "by means of wire, radio, or television communication in interstate or foreign commerce, any writings,

9

signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice . . . ." 18 U.S.C. § 1343. In contrast, bank fraud refers to defrauding "a financial institution" or fraudulently obtaining "property owned by, or under the custody or control of, a financial institution . . . ." 18 U.S.C. § 1344. Both bank fraud and wire fraud contain elements the other does not, meaning that Reese's conviction for both does not constitute double jeopardy.

D.   ACCEPTANCE OF RESPONSIBILITY

Reese argues that, because the Court denied the Government's request for a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1, it was error for the Court to deny Reese's request for a sentencing guidelines reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. This argument is without merit. A finding that a defendant did not "willfully obstruct[] or impede[] the administration of justice" as required for an obstruction of justice enhancement, U.S.S.G. § 3C1.1, does not necessarily mean that the defendant "clearly demonstrate[d] acceptance of responsibility for his offense." U.S.S.G. § 3E1.1. Here, based on Reese's conduct before and during trial, and also on the parties' sentencing submissions, the Court found that Reese neither obstructed

10

justice     nor     clearly     demonstrated     acceptance     of
responsibility. Thus, he is not entitled to a reduction under
U.S.S.G. § 3E1.1.

E.   ARTICULATION AT SENTENCING

     Reese  makes  the  argument  that  the  Court  erroneously
failed  to  articulate  an  explanation  for  its  sentencing
determination. At sentencing, "a district court errs if it
fails to adequately explain its chosen sentence . . . ."
United States v. Cavera, 550 F.3d 180, 190 (2d Cir. 2008).
Here, upon an examination of the sentencing transcript, the
Court  is  persuaded  that  further  explanation  of  Reese's
sentence beyond adoption of the factual recitation in the
Presentence Report is warranted. Thus, at the hearing held on
June 20, 2014, the Court articulated its basis for Reese's
sentence. See Chaklader, 232 F.3d at 247.[3]

---

[3] Specifically, the Court stated that it "took into account the trial
evidence, which found Mr. Reese guilty of the charges the Government
brought against him. The evidence established to the jury beyond a
reasonable doubt and to this Court's satisfaction for sentencing purposes
that Mr. Reese was the organizer and leader of this conspiracy which he
brought  others.  The  crime  was  serious,  it  was  systematic,  it  was
sophisticated, and the methods that Mr. Reese employed over a substantial
period of time, in the Court's view, all of these circumstances, as well
as Mr. Reese's prior criminal activities, warrant the sentence that the
Court imposed." Tr. Of June 20, 2014 Hearing in the Matter of United
States v. Christopher Reese, at 30 (Dkt. No. 173).

F.   CONSECUTIVE TERMS OF SUPERVISED RELEASE

The Court sentenced Reese to three years' supervised release for Counts One, Two, and Three, to run consecutively to each other, and one year of supervised release for Count Four, to run consecutively to the other counts, thus creating an effective term of four years' supervised release. Reese argues that this sentence is illegal, in that 18 U.S.C. § 3624(e) requires that a "term of supervised release . . . run[] concurrently with any . . . term of probation or supervised release or parole for another offense to which the person is subject . . . ." Reese is correct -- his terms of supervised release cannot run consecutively. See United States v. Sash, 396 F.3d 515, 525 (2d Cir. 2005) (holding that 18 U.S.C. § 3624(e) requires terms of supervised release to be run concurrently). Thus, Reese's one year term of supervised release for Count Four shall run concurrently to his other counts, for a total effective term of three years' supervised release.

G.   RESTITUTION ORDER

Reese challenges the inclusion of certain parties as victims in the Restitution Order -- namely Metropolitan Equities, Cox Media, Robert Weiss, Signature Bank, and Wells Fargo. Reese's challenges are without merit.

12

As discussed above, supra Section A, the Court finds that the Government proved by a preponderance of the evidence that both Metropolitan Equities and Cox Media were victims of Reese's criminal acts. The standard is the same regarding a restitution order -- the Government must prove by a preponderance of the evidence that each individual lost the amount of money set forth in the Restitution Order. See United States v. Lundquist, 731 F.3d 124, 131 (2d Cir. 2013) ("To the extent there is any dispute as to the proper amount or type of restitution, it shall be resolved by the court by the preponderance of the evidence, with the government bearing the burden of proof." (citations omitted)). Here, the Court finds that the Government met its burden in regards to victims Metropolitan Equities and Cox Media.

The case of victim Robert Weiss ("Weiss") is similar to that of Metropolitan Equities. A check was fraudulently drawn from Weiss's JP Morgan Chase Bank account as part of Reese's criminal conspiracy. When the JP Morgan Chase Bank employee at trial listed all victims of Reese's conspiracy who were reimbursed by JP Morgan Chase Bank, he did not mention Weiss. (Restitution Letter at 6.) Thus, Weiss must have suffered the loss himself. The Court finds that the Government has proved

13

by a preponderance of the evidence that Weiss suffered a loss in the amount listed in the Restitution Order.

Reese's arguments regarding Signature Bank are similarly unavailing. To begin, Signature Bank is not listed as a victim in the Restitution Order. Further, as the Government indicated in the Restitution Letter, Signature Bank was reimbursed by Citibank for its $2,200 loss. (Restitution Letter at 8.) By reimbursing Signature Bank, Citibank suffered a loss. While Reese claims that the $2,200 quantity that was lost was ultimately recovered by the Government, he provides no evidence for his claim. For these reasons, Reese's claim regarding Signature Bank fails.

The Court also finds that the Government met its burden in proving that Wells Fargo suffered a loss. Wells Fargo's loss stems from a $22,918 check issued from the Wells Fargo account of a company known as OgilvyAction, which was fraudulently cashed by one of Reese's co-conspirators. Reese first argues that Wells Fargo suffered no loss because the Government seized the funds after the funds were deposited in an account Reese and his co-conspirators controlled.

Reese's belief that the Government seized the funds in question appears to stem from an exchange between the parties in their respective sentencing submissions. In his sentencing

14

submission dated October 16, 2013 (Dkt. No. 120), Reese had
argued that he should receive a sentencing guidelines
reduction because his offense was partially abandoned --
alleging that he and his co-conspirators had made no attempt
to withdraw the funds from the OgilvyAction check after the
check was deposited, and that the Government had ultimately
seized these funds. (Id. at 6). The Government, in its
sentencing memorandum dated December 13, 2013 (Dkt. No. 123),
argued in response that the offense could not be considered
abandoned because "[a] defendant who steals $22,000 and
leaves it in a bank account that the Government later seizes
has still completed the crime of theft." (Id. at 18). Reese
claims that the statement by the Government -- "the Government
later seizes" -- is an admission that the Government did
actually seize the funds from the OgilvyAction check, and
that therefore Wells Fargo suffered no loss. The Court does
not find the Government's statement to be an admission that
the Government seized the funds; instead, it is a hypothetical
statement explaining that -- even if the facts alleged by
Reese were true -- he would still not be entitled to a
sentencing guidelines reduction for abandonment of the
offense. The Court thus credits the Government's assertion

15

that it did not seize the funds deriving from the OgilvyAction check.[4]

Reese next argues that the Government has not provided sufficient evidence to prove beyond a preponderance of the evidence that Wells Fargo suffered an actual loss, and that therefore Wells Fargo cannot be considered a victim. The Court disagrees. The Government provided two pieces of evidence to show that Wells Fargo suffered a loss. The first is a Wells Fargo record displaying a copy of the fraudulently-altered OgilvyAction check. (Gov't Trial Ex. 208.) This record contains the notation "Check Paid" in reference to the OgilvyAction check. The second piece of evidence is an affidavit of check fraud submitted by OgilvyAction employee Julia Giamarusti to Wells Fargo. (Affirmation of Micah W. J. Smith, Dkt. No. 169, dated January 31, 2014 ("Q: How did you discover there was fraud on your account? A: I looked into the on line [sic] banking site and found it was cashed").)

_____

[4] In his letter dated June 20, 2014 (Dkt. No. 170), Reese provided the Court with an email from the Government to Reese's standby counsel, in which Reese claims the Government admitted that Wells Fargo was not a victim. Responding in its July 24, 2014 letter (Dkt. No. 176), the Government represents that, in a later email to Reese's standby counsel, the Government notified standby counsel that, upon further review, it appeared the OgilvyAction check had caused actual losses, and that therefore Wells Fargo should rightfully be considered a victim. The Court is persuaded that the email provided by Reese does not support his argument that Wells Fargo suffered no loss.

16

These two records illustrate clearly that the funds were withdrawn from the OgilvyAction account. According to Julia Giamarusti, Wells Fargo reimbursed OgilvyAction for the loss. (Restitution Letter at 10.) In so doing, Wells Fargo suffered the $22,918 loss. While Reese argues that Wells Fargo may have been able to recover the OgilvyAction funds, any such argument is pure speculation. The evidence provided to the Court is sufficient for it to find by a preponderance of the evidence that Wells Fargo suffered a loss due to Reese's criminal actions.

H.    FORFEITURE ORDER

On February 3, 2014, the Court issued the Forfeiture Order, imposing a money judgment on Reese. (Dkt. No. 141.) By letter dated February 14, 2014 (Dkt. No. 145), Reese moved to vacate the Forfeiture Order. To begin, Reese argues in Section V of his letter motion that the Forfeiture Order should be vacated because he was never granted the opportunity to challenge its contents. Reese is correct. Rule 32.2(b)(1)(B) of the Federal Rules of Criminal Procedure requires that, "[i]f the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty." While Reese did not formally request a hearing, the Court construed his challenge to the Forfeiture Order as

17

such a request. Thus, by order dated February 25, 2014 (Dkt.
No. 150), the Court vacated the Forfeiture Order until Reese
had the opportunity in open court to dispute the forfeiture
allegations.

At the June 20, 2014 hearing, Reese argued that the
forfeiture amount cannot include any funds deriving from
fraudulently-altered checks that Reese and his co-
conspirators deposited but ultimately failed to withdraw from
accounts they controlled directly. The Court is not
persuaded. 18 U.S.C. § 982(a)(2)(A) states that the Court, in
imposing a sentence for "a violation of, or a conspiracy to
violate . . . section . . . 1343, or 1344 of this title
. . . shall order that the person forfeit to the United States
any property constituting, or derived from, proceeds the
person obtained directly or indirectly, as a result of the
violation." The question at hand is whether "proceeds" as
used in § 982(a)(2)(A) refers to all funds that were stolen
and deposited in conspirator-controlled accounts as part of
the conspiracy or only those funds that the perpetrators were
able to successfully withdraw from their accounts without
seizure by the Government or the banks.

The Second Circuit supported the former definition of
"proceeds" in the case of United States v. Peters, holding

18

that "reading 'proceeds' to mean 'receipts' rather than 'profits' . . . better vindicates the primary purpose of the statute." 732 F.3d 93, 101 (2nd Cir. 2013). The Peters Court explained that this definition of "proceeds" would serve to punish "all convicted criminals who receive income from illegal activity, not merely those whose activity turns a profit." Id. (quoting United States v. Simmons, 154 F.3d 765, 771 (8th Cir. 1998)). Thus, in the case of a fraudulent loan, the proceeds "equal the amount of the loan, irrespective of whether the defendant personally profited from the loan or whether the bank recovered part of the loan principle." Id. at 102 (citation omitted). Similarly, in this case Reese and his co-conspirators "received income from illegal activity" and deposited that income in bank accounts they controlled, but ultimately the Government and the banks were able to recover part of that income. Under Peters, the "proceeds" of Reese's criminal conduct are the income Reese and his co-conspirators stole and then deposited in their controlled accounts, whether or not they were successful in ultimately withdrawing those funds. Thus, the forfeiture amount as calculated by the Government is correct.

Reese contends that the Second Circuit came to the opposite conclusion in United States v. Contorinis, 692 F.3d

136 (2nd Cir. 2012), but his argument reflects a misreading of the Contorinis precedent. Contorinis concerned an employee of an investment fund convicted of insider trading. The question the Contorinis Court decided was whether the defendant could be ordered to forfeit profits that the investment fund, an innocent third party, gained based on his insider trading. The Court held that "the property must have, at some point, been under the defendant's control or the control of his co-conspirators to be considered acquired by him" and therefore forfeitable. Id. at 147. As the Second Circuit explained in a later case, "Because the profits subject to the challenged forfeiture order were earned by and paid to the employer fund, not Contorinis, and because Contorinis did not control disbursements of the fund's profits, those total profits did not represent his own unlawful gain." United States v. Torres, 703 F.3d 194, 201-02 (2nd Cir. 2012). Unlike in Contorinis, the property at issue in this case was under the control of Reese and his co-conspirators, regardless of whether they were able to withdraw the funds before the Government and the banks froze the accounts. Thus, Contorinis does not limit the Court's ability to order forfeiture of all proceeds of Reese's

20

criminal actions, even if he ultimately did not profit from each of those actions.[5]

Reese further alleges that the Court has no authority to impose a forfeiture order because the redacted indictment submitted to the jury did not contain a forfeiture count. This argument is without merit. Rule 32.2(a) of the Federal Rules of Criminal Procedure states, "A court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence . . . ." Here, both the S1 and S2 indictments contain forfeiture allegations. (See Dkt. Nos. 11, 35.) The indictment submitted to the jury did not contain forfeiture allegations because the jurors were not required to make a finding regarding forfeiture. See United States v. Roberts, 631 F. Supp. 2d 223, 225-26 (E.D.N.Y. 2009) ("If the government does not seek specific property, but rather a personal money judgment, the court itself determines the

---

[5] It is also important to note that Contorinis concerned a different forfeiture statute, 18 U.S.C. § 981, than that which applies to Reese, 18 U.S.C. § 982. In insider trading cases like Contorinis, Section 981 defines proceeds as "the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods and services." Contorinis, 692 F.3d at 145. The forfeiture statue in the current case, Section 982, contains no such setoff for "direct costs incurred."

amount of money that the defendant will be ordered to pay. The defendant is not entitled to have the jury decide the amount of the forfeiture." (citations omitted)). The S1 and S2 indictments clearly placed Reese on notice that the Government was seeking forfeiture, as required by Rule 32.2(a). Thus, Reese's claim fails.

Next, Reese claims that the Court lacks authority to impose a final order of forfeiture because the Court never imposed a preliminary order of forfeiture based on Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure. Rule 32.2(b)(2) calls for the Court to "enter a preliminary order of forfeiture setting forth the amount of any money judgment" if the Court "finds that property is subject to forfeiture." Federal R. Crim. P. 32.2(b)(2)(A). In this case, the Court has not entered a preliminary order of forfeiture. Still, "the failure to enter a preliminary order before sentencing and judgment, i.e., in a timely fashion per Rule 32.2, does not deprive the district court of authority to enter a final order of forfeiture," as long as the defendant receives "adequate notice and procedures to contest the deprivation of property rights[] that result from criminal forfeiture . . . ." United States v. Schwartz, 503 F. App'x 443, 447 (6th Cir. 2012). Here, Reese was accorded ample opportunity

to contest the Government's forfeiture request in open court at the hearing on June 20, 2014. Therefore, the lack of a preliminary order does not preclude the Court from issuing a final forfeiture order.

Finally, Reese argues that the Court's failure to inquire at trial whether either party requested a jury determination of forfeiture, as required by Rule 32.2(b)(5)(A), means that the Court cannot now impose a forfeiture order. In fact, Rule 32.2(b)(5)(A) applies only when the Government pursues forfeiture of specific property, not when it seeks a money judgment. See Roberts, 631 F. Supp. 2d at 225-26; United States v. Reiner, 393 F. Supp. 2d 52, 56-57 (D. Me. 2005). Because the Government here seeks not specific property but a money judgment, Reese had no right to a jury determination regarding forfeiture. Thus, the Court need not have inquired whether either party desired such a determination. Reese's claim is therefore without merit.

I. MOTION FOR NEW TRIAL

Reese, in his June 23, 2014 motion for a new trial (Dkt. No. 171), claims that Michael Thompson ("Thompson"), a representative of J.P. Morgan Chase Bank, committed perjury at trial. Specifically, Reese points to Thompson's statement that, when a fraudulent check is withdrawn from a customer's

23

account, the bank "suffer[s] a loss" and the customer is "owed back funds." (Dkt. No. 171 at 2.) Reese argues that Thompson's statements were perjurious because, in this case, JP Morgan Chase Bank did not reimburse every customer who was the victim of Reese's check fraud and therefore did not suffer a loss in each case.

Reese's arguments are without merit. It is clear that Thompson was speaking generally regarding JP Morgan Chase Bank's policies on fraudulent check withdrawals. In fact, Thompson's comments came in response to this question: "[G]enerally speaking, what are the bank's policies regarding checks that are fraudulently deposited in customer accounts?" (Id.) At no point did Thompson state that every customer is reimbursed by the bank and that in every case JP Morgan Chase Bank suffers a loss. Thus, Thompson plainly committed no perjury, and Reese's motion for a new trial is denied.

## IV.   ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motions (Dkt. Nos. 133, 138, 139, 143, 168) of defendant Christopher Reese ("Reese") for correction of sentence regarding Consecutive Terms of Supervised Release, and Articulation of Leadership Enhancement, Victim

24

Enhancement, and Sentencing are **GRANTED**. The Court will issue an Amended Judgment and Order to reflect the change in supervised release, and the Court provided articulation regarding Leadership Enhancement, Victim Enhancement, and Sentencing on at the hearing of June 20, 2014. All other claims are **DENIED**; and it is further

    **ORDERED** that Reese's motion (Dkt. No. 146) to vacate the Restitution Order is **DENIED**; and it is further

    **ORDERED** that Reese's motion (Dkt. No. 141) to vacate the Forfeiture Order is **GRANTED**. The Court held a hearing on June 20, 2014 to address Reese's claims and found them to be without merit. Thus, the Forfeiture Order is **IMPOSED**. All other claims are **DENIED**; and it is finally

    **ORDERED** that Reese's motion (Dkt. No. 171) for a new trial is **DENIED**.

**SO ORDERED:**

Dated:    New York, New York
          28 July 2014

                                        Victor Marrero
                                         U.S.D.J.