CHRISTOPHER E. REESE
REGISTER NO. 17878-083
L.S.C.I. ALLENWOOD
P.O. BOX 1000
WHITE DEER, PENNSYLVANIA 17887

FEB 24 2020

CHAMBERS OF
JUDGE MARRERO

JANUARY 15, 2020

THE HONORABLE VICTOR MARRERO
SENIOR U.S. DISTRICT JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
40 CENTRE STREET
NEW YORK, NEW YORK 10007

Re: United States v. Christopher E. Reese, Docket No. 12 Cr. 629 (VM)

Dear Judge Marrero:

Defendant, pursuant to 18 U.S.C. 3582(c)(1)(A), respectfully submits this letter-motion for an order modifying the 108 month term of imprisonment imposed by this Court on January 24, 2014, based on "extraordinary or compelling circumstances." I am currently scheduled to be released from the custody of the Bureau of Prisons on December 30, 2020, and I ask that the Court modify and reduce the term to "time-served."

In or about February 2014, at the Metropolitan Correctional Center in lower Manhattan, upon returning to my assigned housing unit I observed another prisoner (with whom I had become familiar) behaving erratically. Specifically, the other inmate was approaching a door which prevents prisoners from departing the unit without staff knowledge and express permission. The door opens up to a "sally port" and elevator bank. Upon observing this behavior, I immediate asked the prisoner what his intentions were. The prisoner stated, in substance, and in part, "I'm going home." At the same time, the Correction Officer assigned to the unit for that evening-watch shift appeared and shouted to the prisoner "I thought I told you to get away from the door?!" The prisoner then departed the area.

On the following day, I again observed the prisoners behaving in a manner that was noticeably different from what I had come to observe. That behavior included refusing to obey the orders of the unit officer to stand for daily "count." Having observed this conduct, I expressed my concern to the evening-watch unit officer, who had repeatedly (for two days) warned the prisoner that his refusal to comply with staff directives would not be tolerated. In raising my concerns with the unit officer, I stated that I was concerned about the prisoners mental health, and I suggested that the unit officer contact someone in psychology to seek assistance for the prisoner. The unit officer, in no uncertain terms, stated that he didn't believe the inmate was experiencing a mental health crisis and that if I disagreed I was free to contact psychology myself.

Following my conversation with the unit officer, I took the liberty of paying closer attention to the prisoner than I had. I noticed that the prisoner had not eaten dinner than evening. I also made it a point to see if the prisoner awoke the following day to receive his breakfast (which appeared to be his normal routine), and noticed that he had not done so. I also noticed that the prisoner had been sleeping far more than usual. In addition, based on conversations that I had previously had with the prisoner, I knew that he had an elderly and sick mother who lived alone (after he was arrested in jailed on the then-current charges). I also knew that he was mother's caretaker, and was depressed about not being able to obtain release on bond so that he could continue to take care of his mother.

After noticing that the inmate had not reported for breakfast, I approached the inmate's cell and noticed that he was asleep. I immediately sent an electronic message to the Psychology Department detailing my observations and expressing concerns that the prisoner might be experiencing a mental health crisis, which might be mistaken for an unwillingness to comply with staff directives. I then requested that the prisoner be seen prior to the evening-watch tour, because I was concerned that if he did not comply with staff directive to stand for count that evening, he would be removed to the Special Housing Unit and disciplinary action would be taken. I then followed up by bringing the matter to

the attention of my assigned Case Manager (Zuleyka Gardner). Immediately thereafter, Psychology and Unit Team staff attempted to assess the prisoner, who -- within minutes -- attempted to commit suicide.

Thereafter, I was summoned to the Unit Team office by Case Manager Gardner and then-Unit Manager Ken Haas, where I was thanked by both staff members and informed that my observations and notifications prevented the prisoner from committing suicide. I was also informed that, because of my efforts, I would be receiving a monetary "award." On March 13, 2014, $50.00 was deposited into my inmate account.

On November 13, 2019, I submitted a written request to the Warden of my current facility (L.S.C.I. Allenwood), requesting that I be considered for a sentence modification, pursuant to 18 U.S.C 3582(c)(1)(A), based on the foregoing. In that request, I submitted that not only did my efforts result is the preservation of life, but the assistance I provided furthered one of the Federal Bureau of Prisons primary goals, and statutory responsibilities, of keeping prisoners safe. I submitted that the circumstances are genuinely "extraordinary and compelling," and warrant consideration -- especially considering my health and difficulties associated therewith. No response has been received by the Warden, so I am now seeking judicial consideration -- consistent with Section 3582(c)(1)(A), as amended by the First Step Act of 2018.

WHEREFORE, premises considered, Defendant prays that the Court will issue an order granting this motion, and modifying the term of imprisonment from 108 months imprisonment, to time-served.

Respectfully submitted,
/s/ Christopher E. Reese

---
CHRISTOPHER E. REESE

cc: U.S. Attorneys Office (SDNY)